Sammie FELDER, Jr.,
Petitioner-Appellant,

v.

O.L. McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 84–2336.

United States Court of Appeals,
Fifth Circuit.

July 5, 1985.

Rehearing Denied Aug. 23, 1985.

case was violated by the admission of a confession thus obtained and that the admission of the confession elicited by this violation was not harmless. Accordingly, we reverse the district court judgment denying his application for habeas corpus and remand for issuance of the writ unless the State shall commence a new trial within ninety days after the issuance of our mandate.

Jay Topkis, Todd D. Stern, New York City, Peter Buscemi, Paul, Weiss, Rifkind, Wharton & Garrison, Washington, D.C., Bruce V. Griffiths, Houston, Tex., Jill Levi, Rego Park, N.Y., for petitioner-appellant.

Jim Mattox, Atty. Gen., J.D. Hooper, Duane E. Crowley, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, JOLLY and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

After counsel for a person who has been charged with and arrested for a criminal offense has directed the police not to interrogate the accused in the absence of counsel, a confession elicited from the accused by police questioning in counsel's absence is inadmissible even though the police have given him a *Miranda* warning. The accused's response to the questioning is not a waiver of his previously-asserted right to the assistance of counsel. We, therefore, hold that the accused's sixth amendment right to counsel in this capital

## I.

James Hanks, a quadraplegic, was brutally killed in the course of a robbery committed in Houston, Texas. Almost a month later, on April 11, 1975, a Houston police officer filed an affidavit and felony complaint in the Harris County Justice of the Peace court charging Sammie Felder, Jr., with capital murder.[1] On the same day the Texas court issued a fugitive warrant for Felder's arrest. Three days later, Idaho police stopped Felder in Idaho Falls, Idaho, for a minor traffic offense, but arrested him when he refused to produce a driver's license and gave the police a false name. They then gave Felder a *Miranda* warning. The same day they discovered the Texas fugitive warrant and held Felder on it pending extradition proceedings. The next day, Felder was arraigned on the fugitive warrant before an Idaho court in Bonneville County, Idaho. The court appointed a member of the local bar, R. John Insinger, Esq., to represent Felder.

Insinger consulted with Felder almost daily. He explicitly instructed the Idaho police not to question Felder about any of Felder's legal affairs unless he was present, and the police agreed. The Idaho police complied with the agreement; when they wished to question Felder about a reported murder in Denver, apparently unrelated to the Texas offense, they notified Insinger, who agreed to the interrogation and was present during it.

Members of the Houston police department also knew that Insinger represented Felder. Houston police officers spoke to

1. *See, e.g.,* Texas Code of Crim.Proc.Ann. arts. 15.03, 15.04 (1977).

Insinger twice by telephone in an effort to secure his cooperation in the extradition proceedings and a waiver of extradition in exchange for a possible plea concession. Felder, on Insinger's advice, waived extradition.

Several days later, on April 23, 1975, a Houston police officer, J.W. Clampitte, who personally knew that a lawyer had been appointed to represent Felder, came to Idaho and, after giving Felder the *Miranda* warning, questioned him about the Texas charge. The interview was initiated by Clampitte without notice to Insinger, who did not consent to it and was not present. Clampitte obtained an oral and then later a written confession, the first paragraph of which recited the *Miranda* warning. Felder was then transported to Texas, where he was later indicted by the grand jury and tried for capital murder.

At Felder's trial, the Texas court ruled that Felder's confession was voluntary and admissible. Felder was convicted and sentenced to death in 1976. His appeal was denied by the Texas Court of Criminal Appeals in 1978[2] and his petition for a writ of certiorari was thereafter denied.[3]

Felder's execution was then scheduled. He thereafter filed petitions for habeas corpus in the Harris County district court and in the Texas Court of Criminal Appeals. The lower court recommended denial of the petition and denied a request for a stay of Felder's execution. The Court of Criminal Appeals later denied both a stay of execution and the habeas corpus petition. Neither court afforded petitioner an opportunity to be heard.

Felder then filed a federal habeas corpus petition in the United States District Court for the Southern District of Texas (Houston Division). On the same day, that court granted a stay of execution which is still in effect.

Because Felder had not exhausted his state remedies with respect to some of the claims asserted in the federal petition, he moved to dismiss his petition without prejudice so that the claims might be considered in the first instance by the state courts. The district court granted Felder's motion to dismiss, but this court reversed and remanded to the district court with instructions to proceed to the merits of the petition because the state had waived exhaustion.[4] This court's mandate issued on January 12, 1983. No further hearing of any kind was held in the district court. On April 24, 1984, the district court filed an opinion denying Felder's habeas corpus petition.

## II.

▮▮▮ The sixth amendment to the Constitution, made applicable to the states by the fourteenth amendment,[5] guarantees the accused in all criminal prosecutions the right "to have the assistance of counsel for his defense." This right, as the Supreme Court has reminded us in *Brewer v. Williams,* "is indispensable to the fair administration of our adversary system of criminal justice" and is "vital ... at the pretrial stage."[6] We look to state law to determine when adversarial proceedings against the accused have commenced, implementing the sixth amendment right to counsel.[7] Here, as in *Brewer,* there can be no doubt that judicial proceedings had been initiated against Felder before Clampitte interrogated him. The filing of an affidavit and criminal complaint in a Justice of the Peace

---

**2.** *Felder v. State,* 564 S.W.2d 776 (Tex.Crim.App. 1978) (en banc).

**3.** *Felder v. Texas,* 440 U.S. 950, 99 S.Ct. 1433, 59 L.Ed.2d 640 (1979).

**4.** *Felder v. Estelle,* 693 F.2d 549 (5th Cir.1982).

**5.** *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

**6.** 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424, 436 (1977).

**7.** *Moore v. Illinois,* 434 U.S. 220, 227, 98 S.Ct. 458, 464, 54 L.Ed.2d 424, 433 (1977); *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417 (1972).

court constitutes the institution of formal judicial criminal proceedings in Texas.[8]

Clampitte knew a lawyer had been appointed to represent Felder. He testified, "the Sheriff's department there [in Idaho] had advised me he had been represented by an attorney prior to my arriving." Officer Clampitte asked Felder during interrogation whether he had conferred with a lawyer, and Felder said "yes." The state relies on a statement by the state trial court that Clampitte "understood" a lawyer had been appointed only to advise Felder about extradition, but Insinger's appointment was not so qualified and, as we have pointed out, he had in fact engaged in plea bargaining with the Houston police and had represented Felder in the investigation of the Denver matter.

There is no merit to the state's argument that Insinger's appointment terminated upon Felder's waiver of extradition. Insinger represented Felder as to all criminal matters facing the accused while he was present in Idaho, and the attorney was treated accordingly by both the Houston and Idaho police. As in *Brewer*, the police officer set out to obtain information from Felder knowing that counsel had been appointed to represent him and without making any effort to determine whether counsel had forbidden such interrogation or whether counsel wished to be present. Because Clampitte knew that Felder had an attorney and had conferred with the attorney, he should have inquired whether the attorney had forbidden interviews.

In *Brewer*, a murder suspect's attorney instructed the police not to question his client during a car ride from Davenport to Des Moines, Iowa. The police agreed. During the trip the police officers elicited incriminating statements from Williams by suggesting to him that the victim's body should be located and buried. While the officers had given the accused *Miranda* warnings before beginning the trip, they made no further effort to obtain a waiver of his right to the presence of counsel before eliciting incriminating responses. Quoting from its prior decision in *Massiah v. United States*,[9] a case involving different circumstances, the Court held that the accused was denied the sixth amendment right to counsel when the prosecutor used at his trial "evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel."[10]

■ "That the incriminating statements were elicited surreptitiously in the *Massiah* case, and otherwise here, is constitutionally irrelevant," the Court said in *Brewer*.[11] That the *Brewer* statements were elicited over a longer interval and in response to the suggestion that the victim was entitled to a Christian burial is, if not equally constitutionally irrelevant, insufficient to distinguish Clampitte's deliberate interrogation of Felder. *Massiah* and *Brewer* establish a "clear rule ... that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him."[12] As the Court pointed out in a footnote to *Brewer*, the existence of an agreement by the police not to interrogate the accused in the absence of his counsel "provides [the state] with no argument for distinguishing away the protection afforded by *Massiah*."[13]

*Brewer* cannot be distinguished on the basis that in that case the accused had himself initially requested counsel and stat-

---

**8.** *Barnhill v. State,* 657 S.W.2d 131 (Tex.Crim. App.1983); *Bumgarner v. State,* slip op. (Tex.Ct. App.1984). *See also Brewer v. Williams,* 430 U.S. 387, 398–99, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424, 436 (1977).

**9.** 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

**10.** *Brewer v. Williams, supra* n. 6, 430 U.S. at 400, 97 S.Ct. at 1240, 51 L.Ed.2d at 437.

**11.** *Id.*

**12.** *Id.,* 430 U.S. at 401, 97 S.Ct. at 1240, 51 L.Ed.2d at 438.

**13.** *Id.,* 430 U.S. at 401 n. 8, 97 S.Ct. at 1240 n. 8, 51 L.Ed.2d at 438 n. 8.

ed his desire to speak only in counsel's presence, while Felder's lawyer had forbidden interviews with his client. Insinger spoke for Felder as his counsel.[14] As in *Brewer*, it was counsel who "had made clear to the police that no interrogation was to occur...."[15] Indeed, the very purpose of assuring an accused the assistance of counsel is to give him representation by someone better prepared and more competent to speak for him to police and other authorities. Felder's I.Q. is 88, he is characterized as of low average intelligence, and, despite his prior brushes with the law, he was hardly as well qualified as his lawyer to understand the dangers implicit in interrogation by skilled police officers. As Clampitte testified at the suppression hearing, he elicited Felder's confession by marshalling the evidence against him and persuading him that the police knew what had happened. This was the very danger that Insinger, who protected his client fully and faithfully, sought to avoid.

The state relies upon the fact that Clampitte, by giving Felder *Miranda* warnings before questioning him, gave Felder an opportunity to assert his right to counsel and that he failed to do so. This dulls, if it does not miss, the point. Counsel had already been appointed for Felder, and had asserted, on Felder's behalf, in clear, unequivocal terms, Felder's right not to be interrogated in counsel's absence. Felder had not acted in a manner inconsistent with his lawyer's instructions or advice. Clampitte should never have begun the questioning session without first obtaining an unequivocal waiver. The Supreme Court in *Brewer* made clear that the mere giving of *Miranda* warnings, after the accused through his lawyer has instructed the police not to interrogate him, does not sanction that interrogation.[16]

### III.

The state argues that Felder had the right to disregard his lawyer's advice, to waive his sixth amendment rights, and to speak to the police and that he did in fact waive his right to counsel. The right to the assistance of counsel may of course be waived. Whether it has been waived, however, is a factual inquiry. To establish a waiver of the previously-asserted sixth amendment right to the assistance of counsel, the Court held in *Brewer*, it is "incumbent upon the State to prove an intentional relinquishment or abandonment of a known right or privilege."[17] Courts must "indulge in every reasonable presumption against waiver."[18] We are to assess the "totality of the circumstances" in determining whether the purported waiver was voluntary and intelligent.[19]

Felder's written confession contained the statement, "I fully understand all these rights and desiring to waive all of them, I hereby make the following voluntary statement." Felder signed the written confession only after he had made the oral confession and hence had fully incriminated himself. The oral confession was, as is customary, reduced to writing. Signing the written confession was an after-the-fact confirmation and not a voluntary relinquishment of constitutional rights.

Here, as in *Brewer*, the record falls far short of sustaining the state's burden of showing a waiver of sixth amendment rights. Felder did not initiate the interview with Clampitte, and it was conducted not only after Felder's lawyer

---

**14.** *See, e.g., Brewer, supra* n. 6, 430 U.S. at 405, 97 S.Ct. at 1242, 51 L.Ed.2d at 440.

**15.** *Id.*

**16.** *Brewer, supra* n. 6, 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 439.

**17.** *Brewer v. Williams, supra* n. 6, 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 439 (citations omitted).

**18.** *Id.* (citations omitted).

**19.** *Wyrick v. Fields*, 459 U.S. 42, 46, 103 S.Ct. 394, 396, 74 L.Ed.2d 214, 218 (1982); *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

had advised him not to talk to the police but despite the lawyer's categorical instruction to the police not to question his client. Clampitte did give Felder a *Miranda* warning twice but Felder did not initiate the conversation, did not disavow his lawyer, and did not express any desire to talk either with police officers generally or with Clampitte personally in the absence of his attorney.[20] He gave no other affirmative indication of a desire to relinquish his previously-asserted right to the presence of counsel. As the Supreme Court established in *Brewer*, a waiver of the sixth amendment right to counsel requires more than a recital of *Miranda* rights; the state must prove not only that a defendant understood his right to counsel but that he relinquished it.[21] As we stated in *United States v. Massey*,[22] "a valid waiver will not be presumed simply from the fact that a confession was in fact eventually obtained ... or that a waiver was eventually signed."

*Brewer* requires the conclusion that the confession was obtained in violation of Felder's sixth amendment rights. As in *Brewer*, Felder's counsel instructed law enforcement authorities not to interrogate his client in his absence. The police initiated an interrogation of Felder in violation of counsel's instructions. Although Felder may have understood his sixth amendment right to the assistance of counsel during this interrogation, he did not waive the right to have counsel present. Because these facts are indistinguishable from those in *Brewer*, we must conclude that Felder did not voluntarily relinquish his sixth amendment right to the assistance of counsel and therefore the confession must be suppressed.

Because we decide this case under the sixth amendment, we express no opinion on Felder's rights under the fifth amendment guarantee of due process.[23]

## IV.

At oral argument, for the first time, the State contended that the use of Felder's confession was at worst harmless error because there was also evidence that he had orally admitted committing the crime to a friend in Denver, Edith Cobb, who testified for the State at the trial. Ms. Cobb testified that, before Felder was arrested in Idaho, he had told her that he had entered the apartment of a man he knew who had $1100 to $1300 in cash. He had carried a .38 revolver in case anyone tried to stop him. He had tried to get the money and, when the man recognized him, he had picked up a pair of scissors and stabbed the man to death, giving further details of the homicide. Ms. Cobb had given this account to the Denver police department and this had led to the filing of the charge against Felder and the issuance of the warrant for his arrest.

The thesis that two confessions do no more harm than one is ingenious, but one we have never adopted.[24] Ms. Cobb's oral

**20.** Cf. *Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982).

**21.** *Brewer v. Williams*, supra n. 6, 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 439; see *Silva v. Estelle*, 672 F.2d 457, 458 (5th Cir.1982); *Edwards v. Arizona*, 451 U.S. 477, 485 n. 8, 101 S.Ct. 1880, 1885 n. 8, 68 L.Ed.2d 378, 386 n. 8 (1981).

**22.** 550 F.2d 300, 307–308 (5th Cir.1977).

**23.** See *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), a 1981 decision not applicable here because it has been held not retroactive; *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984); *United States v. Priest*, 409 F.2d 491 (5th Cir.

1969); *Nash v. Estelle*, 597 F.2d 513 (5th Cir. 1979) (en banc); *Blasingame v. Estelle*, 604 F.2d 893, 895 (5th Cir.1979); *United States v. Massey*, 550 F.2d 300, 307 (5th Cir.1977); *Silva v. Estelle*, 672 F.2d 457 (5th Cir.1982), and *Government of Canal Zone v. Gomez*, 566 F.2d 1289, 1291 (5th Cir.1978). See also *United States v. Hernandez*, 574 F.2d 1362, 1370 n. 16 (5th Cir.1978) and authorities cited therein.

**24.** See *United States v. Webb*, 755 F.2d 382 (5th Cir.1985), in which we reversed a conviction after holding that two of the three confessions introduced were obtained in violation of *Edwards*. See also *Harryman v. Estelle*, 616 F.2d 870, 876 (5th Cir.1980) (en banc), cert. denied, 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980).

recall of Felder's statement was far less impressive than the detailed account spelled out in his written confession, which is deliberate, lengthy, and precise. *Chapman v. California* [25] and a host of other cases [26] teach that, for constitutional error to be ignored, it must be harmless beyond a reasonable doubt. A mere comparison of Ms. Cobb's testimony with the written statement introduced at trial demonstrates the weight that a jury might put on the later written and signed statement. Harm is demonstrable. The state cannot show that admission of Felder's confession to the police officer was harmless beyond a reasonable doubt.

### V.

According to Texas jurisprudence, a criminal defendant who testifies on his own behalf at the punishment phase of trial and admits guilt waives appellate review of evidentiary rulings made during the guilt phase of the trial.[27] After Felder was found guilty, his counsel moved at the start of the punishment phase of the trial for an order preventing the prosecutor from asking Felder—in the event Felder elected to testify on punishment—whether he had committed the crime. The trial court refused to give this order and Felder elected not to testify at the punishment phase. The state concedes that it would have been improper to ask Felder at the punishment phase whether he was "guilty" or "not guilty." But to ask Felder whether he had "committed the crime" would have been an equivalent injury.

We do not consider whether, in the event of Felder's retrial, this "waiver rule" would impermissibly chill Felder's constitutional right to take the stand in his own behalf. The issue may never recur. The state may not elect to try Felder, Felder and the state may make some sort of plea bargain, or a new trial may be conducted and Felder may be acquitted. If he is convicted, the questions he may be asked at the punishment phase of a new trial may be different and may be directed only to actions he took, not to the ultimate issue of guilt or innocence. Accordingly, our expression of an opinion at this stage would be dicta on an important constitutional issue. Such issues should be decided only on a specific record and only when essential to decision.[28]

For these reasons, the judgment is REVERSED. The Clerk is directed to remand the case to the district court with directions to issue a writ of habeas corpus ordering Felder released from state custody unless within ninety days from the date of our mandate the state shall commence a new trial.

**25.** 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**26.** *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harryman v. Estelle,* 616 F.2d 870, 876 (5th Cir.1980), and authorities cited therein.

**27.** *Gordon v. State,* 651 S.W.2d 793 (Tex.Crim. App.1983); *Smyth v. State,* 634 S.W.2d 721 (Tex. Crim.App.1982).

**28.** *E.g., Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).