Brady Lynn BECK, Appellant,

v.

The STATE of Texas, Appellee.

No. 013–85.

Court of Criminal Appeals of Texas, En Banc.

July 2, 1986.

Buddy Stevens, Stanley G. McGee, Angleton, for appellant.

Jim Mapel, Dist. Atty. & Jim Turner, Asst. Dist. Atty., Angleton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant, who was 16 years old at the time of the offense, was certified as an adult and was tried and convicted of capital murder. The court assessed punishment at life imprisonment. See V.T.C.A. Penal Code, Sec. 8.07(d). The Fourteenth Court of Appeals reversed the conviction, holding that appellant's confession made to police should not have been admitted into evidence because appellant had invoked his right to counsel under the United States and Texas Constitutions. *Beck v. State,* 681 S.W.2d 825 (Tex.App.—Houston [14th dist.] 1984). While we will not review the Court of Appeals' determination that the confession was inadmissible, we granted the State's petition for discretionary review

to consider whether the admission was harmful.

Gerald Don Shelton, appellant's uncle, testified that he went to appellant's residence at about 7:00 p.m. on November 2, 1982. A newspaper with an article about the discovery of the body of the deceased was open on the table. Shelton asked appellant if he had anything to do with it. Appellant said he had done it. Shelton testified that over the next two hours appellant told him the details of the murder. Shelton related that appellant told him that he and Darrell Shelton, also a nephew of Gerald's, saw the deceased on the street in Clute and forced him into the trunk of the car. They drove out of town, took money from the deceased and then drove to Brazoria. They then took the deceased out of the trunk and appellant shot him three or four times. Appellant took the deceased's Corvette automobile, drove it to some apartments in Lake Jackson, and parked it. Appellant told his uncle that he killed the deceased because he would be able to identify Darrell and he. He gave his uncle the gun, the car keys to the Corvette and a sock containing live and spent ammunition. His uncle talked to appellant about turning himself in to the police and why he had killed the deceased. When the police arrested appellant later that night, Shelton gave them the gun, keys, and sock containing ammunition.

Lieutenant Matt Wingo of the Brazoria County Sheriff's Department investigated the murder involving appellant. He discovered the deceased's body and a red Corvette cap and subsequently arrested appellant at his house. Appellant's uncle, Shelton, was present when Wingo arrived and he related to Wingo the admissions appellant had made to him. Shelton also gave Wingo the gun, the car keys, and the sock containing ammunition that appellant had given him. As a result of the information Shelton gave him, Wingo found the Corvette in the place appellant had said it would be, which was about a quarter of a mile from appellant's house.

Wingo questioned appellant the day after his arrest and appellant declined to give a written statement, but agreed to discuss the offense with Wingo. The Court of Appeals held this oral confession inadmissible and we do not disturb that finding. However, for the purpose of evaluating the harmfulness of its admission it is necessary to include the testimony about the confession.

Wingo testified that appellant said that he and Darrell Shelton were "looking for somebody to roll." They followed the driver of the Corvette to some apartments in Clute, approached the driver and tried to force him into the trunk of the Corvette. When he did not fit into that trunk they put him in the trunk of their car and drove to a boat ramp where they took his money and discarded his wallet. Then they drove to County Road 244 and told the deceased to walk down the road. Appellant shot him as he walked. Appellant stood over him and fired at him as he lay on the ground. Darrell and appellant left and drove to Houston in the Corvette. They returned to Brazoria county, remembered that they had left the deceased on the road, and went back to the scene and dragged him off the road into some bushes. Appellant drove the Corvette to some apartments near his home and parked it there. He also told Wingo that he wiped the car clean of fingerprints. Appellant told Wingo where the deceased's wallet was located and the police subsequently found it.

Wingo testified on cross examination that Darrell Shelton also told the police the approximate location of the wallet, but that they did not find it on their initial search. After Wingo talked to appellant the police found the wallet.

The State and appellant entered into a stipulation that the medical examiner would testify that he performed an autopsy on the deceased and that the cause of death was gunshot wounds to the neck and head. Only a bullet fragment was recovered from the head of the deceased.

C.E. Anderson, a firearms examiner with the Houston Police Department, testified that he compared the bullet fragment taken from the deceased's head with the ammunition given by appellant to his uncle and then to the police. The fragment was too mutilated to determine if it had been fired from the gun appellant had given his uncle. Anderson said that the fragment was a .22 caliber, Remington Peters brand. He also testified that the empty shell casings, which were in the sock appellant had given to his uncle, were .22 caliber, Remington Peters brand.

■ The Court of Appeals held that appellant's oral confession made to Wingo should not have been admitted at trial. The Court of Appeals reversed the conviction because of the use of the oral confession in violation of appellant's right to counsel under the United States and Texas Constitutions. We now review that reversal by determining the harmfulness of this violation of appellant's constitutional right to counsel. See *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); see also *United States v. Hastings*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

■ The evidence must be examined to determine whether "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California*, supra, 386 U.S. at 23, 87 S.Ct. at 827. Our judgment must be based on our reading of the record and "on what seems to us to have been the probable impact of the [complained of evidence] on the minds of an average jury." *Harrington v. California*, supra, 395 U.S. at 254, 89 S.Ct. at 1728. The error must be found to be harmless beyond a reasonable doubt. The factors of the particular case must be considered, including whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, and the overall strength of the prosecutor's case.

In the instant case appellant's oral confession as related by Wingo at trial was essentially the same as that to which appellant's uncle had previously testified appellant had told him before appellant ever told the police anything. Even without the oral confession made to Wingo the evidence of appellant's guilt was overwhelming. Appellant's uncle's testimony along with the corroborating physical evidence like the location and recovery of the Corvette where appellant said it would be; the car keys given by appellant to his uncle which belonged to the Corvette; and the ammunition gathered from his uncle as a result of appellant's admissions to him was the same caliber and the same brand as that found in the deceased's head. This evidence showed appellant's guilt beyond a reasonable doubt. The State's case without the inadmissible confession was not a weak circumstantial case, but was very strong. Cf. *Harrington v. California*, supra.

In addition, the strength and credibility of appellant's uncle as a witness is also a consideration. Appellant's uncle had taken care of appellant at different times and had an "emotional feeling for [appellant] as an uncle would have for their nephew." Thus, he was certainly a more compelling witness than a police officer to whom appellant confessed after he had already confessed to his uncle, making the prejudicial impact of Wingo's testimony insignificant by comparison. See *Harryman v. Estelle*, 616 F.2d 870 (5th Cir. 1980).

During final argument to the jury both sides discussed the confession made to Wingo mainly in terms of its admissibility. However, in his closing argument, the prosecutor emphasized the admissions made by appellant to his uncle, including the fact that Shelton's testimony deserved much credibility because it told of admissions to a man appellant loved and trusted. The prosecutor argued that appellant's confession to Wingo substantially tracked what he had told his uncle. The emphasis was not on the confession to Wingo but on the admissions made to appellant's uncle.

Appellant points to *Felder v. McCotter*, 765 F.2d 1245 (5th Cir. 1985) and *United States v. Webb*, 755 F.2d 382 (5th Cir. 1985) as analogous cases in which introduction of a confession was harmful despite the admission of other similar evidence. In *Felder*, supra, evidence was introduced that the defendant had orally admitted committing the crime to a friend before his arrest and subsequent confession to the police. This written confession given to police was inadmissible. The Fifth Circuit held that the friend's oral recall of the defendant's admission was "far less impressive than the detailed account spelled out in his written confession, which is deliberate, lengthy, and precise." The Court said that a comparison of the oral confession and the written one demonstrates the weight a jury might put on a later written and signed statement.

In the instant case appellant did not make a written statement. Wingo's oral recitation of appellant's confession, while slightly more detailed than the version that appellant's uncle told, was not much different or more "deliberate, lengthy and precise." Further, as mentioned, the testimony coming from appellant's uncle, a relative who was obviously concerned with appellant's welfare, was far more impressive than substantially the same account coming from a police officer. *Felder*, supra, is distinguishable.

*Webb*, supra, is likewise distinguishable on its facts and circumstances. The inadmissible admissions in *Webb*, supra, led to the discovery of important evidence and provided more information and evidence against the defendant which clearly outweighed the admissible statements made while the defendant was intoxicated and threatening suicide.

The properly admitted evidence of guilt in the instant case is overwhelming and the prejudicial effect of the oral confession to Wingo is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper admission of the oral confession to Wingo was harmless error and that the "minds of an average jury"

would not have found the State's case significantly less persuasive had the oral confession made to Wingo been excluded. Cf. *Delaware v. Van Arsdall*, — U.S. —, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Milton v. Wainwright*, supra; *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California*, supra; *Crawford v. State*, 617 S.W.2d 925 (Tex.Cr.App.1981); *Bridger v. State*, 503 S.W.2d 801 (Tex.Cr.App.1974).

The Court of Appeals judgment reversing appellant's conviction is reversed and the judgment of the trial court is affirmed.

CLINTON, J. concurs in result.

ONION, P.J., not participating.

TEAGUE, Judge, dissenting.

I respectfully dissent because, contrary to the majority opinion's finding, "In the instant case appellant's oral confession, as related by Wingo at trial was essentially the same as that to which appellant's uncle had previously testified appellant had told him before appellant ever told the police anything[,]" (P. ——), I find that "Mr. Shelton's testimony of the appellant's statement to him is far less impressive than the detailed account set out by Lieutenant Wingo in his testimony concerning the 'oral confession' containing detailed gruesome and calculated actions by the appellant" (Appellant's Reply Brief, P. 7). The error in admitting the oral confession into evidence was not harmless beyond a reasonable doubt.