596 So.2d 997 (1992)
Michael Alan DUROCHER, Appellant,
v.
STATE of Florida, Appellee.
No. 74442.
Supreme Court of Florida.
February 13, 1992.
Rehearing Denied April 29, 1992.
*998 Nancy A. Daniels, Public Defender, and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Virlindia Doss and Richard B. Martell, Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
Michael Durocher appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, *999 and affirm both the conviction and sentence.
While in jail awaiting sentencing on a conviction of first-degree murder, Durocher had a jail social worker contact a sheriff's detective regarding Durocher's willingness to confess to another murder if it could be guaranteed that he would receive the death penalty. The detective visited Durocher and told him that such penalty could not be guaranteed. Durocher then wanted to think about what he would do, and he and the detective agreed that the detective would come back the following Monday. On that day he confessed to robbing a Jacksonville store, killing the store's clerk, and taking his car. Durocher also related that he drove the car to Louisiana to see his father, then later brought the car back to Jacksonville, abandoned it, and returned to Louisiana. The state indicted Durocher for premeditated murder and armed robbery. The jury found him guilty of both premeditated and felony murder and armed robbery and recommended the death sentence, which the trial court imposed.
The public defender's office represented Durocher on the charge he was in jail for and had filed a so-called "Edwards notice" with the sheriff's office, the state attorney, and the jail. This letter asked that the authorities not have any conversations with Durocher without notifying the public defender's office. The detective, before responding to Durocher's request to come talk with him, did not notify the public defender. He did, however, take with him a copy of the defender's letter when he visited Durocher. The detective showed Durocher the letter and asked if he wanted to talk with the attorney appointed to represent him on the first murder charge. When Durocher responded in the negative, the detective wrote a waiver on the bottom of the letter,[1] and Durocher signed it. The detective then read Durocher his Miranda[2] rights, and Durocher wrote on the bottom of the rights form: "I understand I am represented by counsel but I wish to speak with Detective Bradley without their presence."
When the detective returned the following Monday, he again read Durocher the Miranda form, which Durocher again signed. After Durocher told him he wanted to confess to another murder, the detective had Durocher transported to the homicide office that afternoon. At that office, after again receiving and waiving his Miranda rights, Durocher confessed to killing and robbing the store clerk. In denying the motion to suppress the trial court found: Durocher made his statements freely and voluntarily; the detective made no improper inducements or promises to him; Durocher initiated contact with the detective; no state agent was involved in Durocher's decision; and when Durocher requested the contact he knew his rights, including that he could have counsel present.
Durocher now argues that the trial court erred in denying his motion to suppress his statements. As he did before the trial court, Durocher claims that the detective's taking his statements violated both his Sixth Amendment right to assistance of counsel and his Fifth Amendment right to remain silent. We disagree.
Durocher had exercised his Sixth Amendment right to counsel as to the murder charge for which he was awaiting sentencing. When Durocher confessed to the second murder, however, he had not been charged with that crime, and, therefore, no Sixth Amendment right to counsel had attached as to that second murder. McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); Kight v. State, 512 So.2d 922 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988); Parham v. State, 522 So.2d 991 (Fla.3d DCA 1988). The Sixth Amendment right to counsel is "offense-specific" and "cannot *1000 be invoked once for all future prosecutions." McNeil, 111 S.Ct. at 2207; Kight (when sixth amendment has not attached to a second crime, invoking the right for a first crime has no effect on the second). Moreover, an attorney cannot unilaterally invoke a client's right to counsel for crimes for which the client has not been charged. Valle v. State, 474 So.2d 796 (Fla. 1985), vacated on other grounds, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986). Thus, the public defender's letter raised no impediment to Durocher's confession. Waterhouse v. State, 429 So.2d 301 (Fla.), cert. denied, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983); Rivera v. State, 547 So.2d 140 (Fla. 4th DCA 1989), review denied, 558 So.2d 19 (Fla. 1990); Parham; Lofton v. State, 471 So.2d 665 (Fla. 5th DCA), review denied, 480 So.2d 1294 (Fla. 1985). There is no merit to Durocher's argument regarding a Sixth Amendment violation.
The same is true as to his claimed Fifth Amendment violation. In Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 378 (1981), the Court held that someone who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Therefore, "Edwards does not foreclose finding a waiver of Fifth Amendment protection ... provided the accused has initiated the conversation or discussions with the authorities." Minnick v. Mississippi, ___ U.S. ___, 111 S.Ct. 486, 492, 112 L.Ed.2d 489 (1990). The invocation of one's Sixth Amendment right to counsel regarding one crime, however, does not invoke one's Fifth Amendment right to remain silent and deal with the police only through counsel regarding another crime. McNeil.
Here, Durocher, not the police, initiated the confession. Both he and the detective knew that Durocher had invoked his Sixth Amendment right to counsel on the first murder charge and that he had counsel available, but Durocher adamantly expressed his desire not to invoke his Fifth Amendment rights regarding the second murder. Nothing prevents an accused from changing his mind and volunteering information after previously invoking the right to counsel, and no Fifth Amendment violation occurred here. Accord Kight.
The control of prosecutorial comments is within a trial court's discretion, and that court's ruling will not be overturned unless an abuse of discretion is shown. Occhicone v. State, 570 So.2d 902 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2067, 114 L.Ed.2d 471 (1991); Hooper v. State, 476 So.2d 1253 (Fla. 1985), cert. denied, 475 U.S. 1098, 106 S.Ct. 1501, 89 L.Ed.2d 901 (1986). Durocher claims that the prosecutor's closing argument mandates a mistrial. He has, however, shown no abuse of discretion in the trial court's refusal to grant a mistrial.
Durocher also argues that the trial court erred in granting the State's challenge for cause to a prospective juror. Determining a juror's competency is within a trial court's discretion, and we will not reverse a trial court's ruling as to a juror unless that discretion has been abused. Pentecost v. State, 545 So.2d 861 (Fla. 1989); Cook v. State, 542 So.2d 964 (Fla. 1989). No abuse of discretion has been shown here.
After reviewing this record, we find that Durocher's conviction is supported by competent, substantial evidence. Therefore, we affirm his conviction of first-degree murder.
The trial court found that several aggravating factors had been established: previous conviction of violent felony;[3] committed during commission of a felony; committed for pecuniary gain; committed to avoid or prevent arrest; and committed *1001 in a cold, calculated, and premeditated manner with no pretense of moral or legal justification. In mitigation the court acknowledged that Durocher had a loving relationship with his mother and retarded brother. Durocher now argues that the evidence does not support finding cold, calculated, and premeditated in aggravation and that the trial court improperly doubled up the felony murder and pecuniary gain aggravators.
Contrary to Durocher's claim, we find the evidence sufficient to support finding the cold, calculated, and premeditated aggravator. Durocher told the detective that he wanted to rob someone and steal a car so that he would have money and transportation for a trip to Louisiana. When he walked by the store where the victim worked, he decided to rob it. He then walked back to his mother's house, packed his clothes, picked up a shotgun he had previously purchased, and walked back to the store. At the store the clerk told Durocher that the business operated solely on credit and that there was no money on the premises. Durocher stood there for a few minutes and then shot the clerk and took thirty to forty dollars and his car keys from him. He told the detective: "I was going to rob the man but after thinking about it I decided it would probably be better to go ahead and kill him then that way the police could not pin it to me." Durocher then wiped his fingerprints off things he had touched, locked the store's front and back doors, and drove away in the victim's car. This sequence of events demonstrates the calculation and planning necessary to the heightened premeditation required to find the cold, calculated, and premeditated aggravator. Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).
In the sentencing order the trial court listed both the felony murder and pecuniary gain factors as having been found in aggravation. Prior to argument, the judge indicated that he thought those two factors should be combined into one and that he would instruct the jury accordingly. The prosecutor told the jury that the two factors should be merged, and the court instructed the jury that these two aggravators should be considered as a single factor. It is difficult to believe that the court did not heed its own instructions or that it weighed each of these aggravators independently of the other. The "double" consideration appears to be merely inartful drafting. Even if the court considered each of these aggravators separately, however, the error would be harmless in light of the court's finding four valid aggravating factors and only a single weak mitigating factor. We are convinced beyond a reasonable doubt that the court would have imposed the death sentence if it had found a combination of four total aggravators rather than listing five aggravators separately.
Therefore, we affirm Durocher's death sentence.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
KOGAN, J., dissents with an opinion, in which BARKETT, J., concurs.
KOGAN, Justice, dissenting.
I dissent for the reasons stated more fully in my partial dissent in Traylor v. State, 596 So.2d 957 (Fla. 1992) (Kogan, J., concurring in part, dissenting in part). In particular, I note that the majority omits to say that the "Edwards Notice" filed with police in this instance had been signed, not merely by the attorney, but also by Durocher himself. The State concedes as much in its brief.[4] Thus, the majority opinion is seriously misleading when it suggests that *1002 the notice was "unilateral" on the part of the attorney. Majority op. at 4.
Because the "Edwards Notice" here was signed by both Durocher and his attorney,[5] it must be construed as Durocher's personal invocation of his Fifth Amendment right not to be questioned by police in the absence of counsel. I therefore cannot agree with the majority's statement that Durocher had not validly invoked his Fifth Amendment rights prior to the time he confessed. He clearly had.
Moreover, while it is true that Durocher later told a social worker of his willingness to talk with police, I cannot conclude that the subsequent events placed this case within the exception recognized in the Edwards line of cases. As I read Edwards, and as I interpret the Florida Constitution independently, the exception applies only for voluntary statements made by the suspect without police prompting.
Here, the police used the statements made to the social worker as an excuse to launch a full-scale, independent, police-initiated interrogation of Durocher several days later. Indeed, the police visited Durocher twice over a period of approximately five days before they extracted the relevant confession from him. The State's brief gives the following characterization of these events:
[During the first talk with police,] appellant inquired as to whether he could be guaranteed the death penalty if he gave the police information about other murders in which he was involved. On learning that no guarantees were possible, appellant said he wanted to think about it. Detective Bradley was to be off for two days (Thursday and Friday) and then work two (Saturday and Sunday), so he told appellant if he changed his mind to call the Homicide Office, otherwise he would come back the following Monday.

(Emphasis added). Thus, according to the State's brief, the detective returned on his own initiative the following Monday and took Durocher from his cell to the Homicide Office where he received Miranda warnings and then gave a taped confession.
While I agree that any nonprivileged statement Durocher volunteered to the social worker is admissible against him under the facts of this case,[6] I cannot reach a similar conclusion about the statements he made during the subsequent police interrogations. A contrary holding would render the applicable federal case law meaningless.
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court established a simple, easy-to-administer rule that applies whenever a suspect invokes the right not to be interrogated without the assistance of counsel. As the Court recently stated:
[O]nce a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation "until counsel has been made available to him," [Edwards,] 451 U.S., at 484-485, 101 S.Ct., at 1884-1885  which means, we have most recently held, that counsel must be present, Minnick v. Mississippi, 498 U.S. [___], 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards ... . The Edwards rule, moreover, is not offense-specific: once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless *1003 counsel is present. Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).
McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991) (first emphasis added). The only exception to this rule is where the suspect voluntarily discloses information to the authorities without prompting. Minnick, 111 S.Ct. at 489.
In Minnick, the Court also flatly rejected the argument that the Edwards right could be waived in the absence of counsel. The Minnick Court made the following comment:
Whatever the ambiguities of our earlier cases on this point, we now hold that when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney.
... .
... A single consultation with an attorney does not remove the suspect from persistent attempts by officials to persuade him to waive his rights, or from the coercive pressures that accompany custody and that may increase as custody is prolonged.
Id. at 491.
"Persistent attempts" are exactly what happened here, even though Durocher initially told a third party of a willingness to talk to police. Indeed, the State itself concedes that Durocher showed reluctance to talk to the police during his first encounter with them. Durocher said he "wanted to think about it" and refused to confess during this first interrogation. Upon learning of this, the detective  not Durocher  established the following Monday as the time when the police themselves would recontact Durocher and question him again. True to his word, the detective returned on Monday, took Durocher from his cell, removed him to the inquisitorial setting of the sheriff's Homicide Office, placed him in front of electronic equipment set up to tape the confession, persuaded him to waive his Miranda rights, and extracted the relevant confession.
I cannot conceive that the initial statement to the social worker somehow authorized the police conduct that the State concedes here. If Edwards and its progeny mean anything, they decry the exact kind of behavior in which the detective engaged. Had Durocher spontaneously blurted his confession to a passing jailor, I would have no problem saying it was admissible evidence. Yet, here, the police themselves seized upon a statement related by a social worker to commence contacts that lasted over several days. Only after two contacts  the second scheduled by the police themselves  did Durocher confess.
If the Edwards exception applies here, then the exception truly has swallowed the rule and the recent, unequivocal statements of the United States Supreme Court in Minnick are empty words.
I also conclude that the confession extracted in this manner violated the Florida Constitution and was independently inadmissible on that basis. In my partial dissent to Traylor, I made the following relevant remarks on this issue:
Obviously, the contact initiated by the suspect must be more than a perfunctory or mundane interaction. The authorities cannot use a simple "hello" or other routine contact as an excuse to interrogate the suspect once the right is asserted. Rather, the suspect must volunteer information to the authorities without being asked to do so. Thus, as soon as any police interrogation commences, the information obtained thereafter would be inadmissible whether or not the suspect is regarded as making some sort of initial contact. The rule is simple: Once the right is asserted, the police may not interrogate in the absence of counsel. Period. Whatever the suspect wishes to give the authorities without prompting is admissible evidence, but all information elicited through any interrogation by those authorities must be suppressed. Art. I, § 9, Fla. Const.
Traylor, 596 So.2d at 983 n. 62 (Kogan, J., concurring in part, dissenting in part) (emphasis added). The confession obtained from Durocher thus violates article I, section *1004 9 of the Florida Constitution in addition to the Edwards line of cases.
For these reasons, I believe the confession should have been suppressed. Because I cannot conclude that the error is harmless based on this record, I would vacate both the conviction and sentence and remand for a new trial that complies with the dictates of article I, section 9 of the Florida Constitution and the Edwards line of cases. I also would instruct the trial court below that, in light of the inadmissibility of the confession and the facts surrounding the murder, the aggravating factor of cold and calculated premeditation is not appropriate in this case. See Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).
Finally, the majority opinion implies that the Sixth Amendment right to counsel must be invoked personally by the accused. Majority op. at 999. This Court suggests the same general result in Traylor, 596 So.2d at 971. However, I do not believe this is legally sound.
In Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 1235-36 & 1240-41, 51 L.Ed.2d 424 (1977), the United States Supreme Court held that the Sixth Amendment right to counsel had been violated when police interrogated a defendant after the attorney had asked the police not to do so. This message was communicated to police by the attorney after he had consulted with the client by telephone. The Court could only have found a violation of the Constitution if the attorney in fact had authority to assert the right on behalf of the client. Obviously, the federal courts do not permit invocation of the Sixth Amendment right until the suspect has been charged, but they do indeed allow attorneys to assert the right on behalf of the client after this point in time. Accord Felder v. McCotter, 765 F.2d 1245, 1246 (5th Cir.1985), cert. denied, 475 U.S. 1111, 106 S.Ct. 1523, 89 L.Ed.2d 921 (1986); United States v. Lilla, 534 F. Supp. 1247 (N.D.N.Y. 1982); United States v. Callabrass, 458 F. Supp. 964 (S.D.N.Y. 1978); Del Duca v. State, 422 So.2d 40, 40 (Fla. 2d DCA 1982).
I respectfully dissent.
BARKETT, J., concurs.
NOTES
[1] The waiver read: "On January 18, 1989 I contacted Detective Bradley and requested to speak with him. I am aware of the letter above and at this time I wish to speak with Detective Bradley without counsel present. I have not been promised anything or threatened to speak with Detective Bradley."
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Durocher's challenge to this aggravator has no merit because the district court affirmed his prior conviction of first-degree murder. Durocher v. State, 560 So.2d 1174 (Fla. 1st DCA 1990).
[4] The State's brief contains the following:

Appellant had been represented by the Public Defender's Office... . He and his public defender had signed a form styled "Edwards Notice" by the Public Defender's Office, and had provided a copy to the State Attorney's Office... . The purpose of the "Edwards Notice" was to advise the police that the defendant did not wish to be questioned without counsel present.
(Citations omitted; emphasis added).
[5] For the reasons stated in my partial dissent to Traylor v. State, 596 So.2d 957 (Fla. 1992) (Kogan, J., concurring in part, dissenting in part), I believe the notice also would have been sufficient if signed solely by counsel, provided counsel previously had consulted with the client.
[6] According to the State's brief, the social worker was a mental health counselor. Thus, the communications between the worker and Durocher may have been privileged under Florida's evidence code. § 90.503, Fla. Stat. (1989).