660 So.2d 1146 (1995)
Robert SAPP, Appellant,
v.
STATE of Florida, Appellee.
No. 94-1938.
District Court of Appeal of Florida, First District.
September 22, 1995.
James T. Miller and Thomas M. Bell of Corse, Bell & Miller, P.A., Jacksonville, for Appellant.
*1147 Robert A. Butterworth, Attorney General; Edward C. Hill, Jr., Assistant Attorney General, Tallahassee, for Appellee.

REVISED ON MOTION FOR CLARIFICATION
BENTON, Judge.
Robert Sapp appeals convictions and sentences for attempted armed robbery and first degree (felony) murder. We affirm. We believe one of his arguments raises a question of great public importance, however, which we certify as such to the Supreme Court of Florida. The question concerns the scope of the prophylactic rule designed to safeguard a criminally accused citizen's right to counsel under the Fifth Amendment.
Mr. Sapp was initially arrested on charges other than those for which he was convicted and sentenced in the proceedings below. At the time of his arrest on a separate robbery charge, he was advised of his Miranda[1] rights, waived them, and agreed to speak to the police. After his arrest, he was taken to jail. Within 24 hours, he was led from his jail cell to a holding room for a "chute speech," a talk in which an assistant public defender gives advice and explains first appearance court procedures. Among other topics, the assistant public defender discusses a claim of rights form, copies of which bailiffs distribute. This form reads:
DEFENDANT'S CLAIM OF RIGHTS
1. The Defendant, together with the undersigned counsel, the Public Defender for the Fourth Judicial Circuit of Florida, hereby asserts his/her right not to make any statements, oral or written, regarding the facts or circumstances of the offense(s) with which he/she is charged, or regarding the facts or circumstances of any criminal offenses for which he/she is not charged (but is merely a witness or suspect), unless his/her attorney is present during any questioning and/or making of any such statements. The Defendant claims his/her right to counsel and the right to remain silent pursuant to Amendments 5 and 6 of the Constitution of the United States.
2. Defendant further asserts that any future waiver of the right to have counsel present or to remain silent must be in writing (with reference to this notice), and only after notice has been given to his/her attorney of the Defendant's intention to waive this right and an opportunity provided for the Defendant and his/her attorney to discuss the waiver of these rights.
Prisoners sign these forms (before they appear in court, as a matter of "judicial convenience") and bailiffs give the signed forms to the assistant public defender, who sees to it that the original is filed with the Clerk of the Court. The Public Defender's office keeps a copy, a copy goes to the State Attorney, and a copy is stapled to the accused's jail papers. Mr. Sapp signed such a claim of rights form, which was duly distributed in the customary fashion.
Still in jail a week later, awaiting trial on the original robbery charge, Mr. Sapp was taken to the "homicide office," where a police detective initiated an interrogation, on the morning of June 9, 1993, concerning the facts of the present case. Before he was questioned, Mr. Sapp was again advised of his *1148 Miranda rights,[2] and again signed a form waiver. Without requesting an attorney, he talked about the circumstances that gave rise to the present case and signed a written statement. After talking to other suspects, the same detective approached Mr. Sapp a second time twelve hours later. Again Mr. Sapp signed a form waiver of constitutional rights, agreed to talk to the detective, and signed a (second) written statement.
By motion to suppress filed before trial, Mr. Sapp argued that his statements to the detective should not be admitted at trial, on grounds that he had invoked his Fifth Amendment right to counsel when he signed the claim of rights form. He contended that his subsequent police-initiated custodial interrogation, without counsel present, was unlawful under Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), and that evidence obtained as a result should be excluded. The trial court denied the motion to suppress, and allowed the extrajudicial statements in evidence at trial, over objection.
Fifth Amendment Prophylaxis
The United States Supreme Court has outlawed custodial interrogation, defined as "questioning initiated by law enforcement officers after a person has been ... deprived of his freedom of action in any significant way," unless the suspect has been informed of certain Fifth Amendment rights, including the privilege against self-incrimination and the right to counsel during interrogation. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966).
Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.
Miranda, 384 U.S. at 473-74, 86 S.Ct. at 1627-28 (footnote omitted). Once invoked, the Supreme Court has since held, the Fifth Amendment right to counsel cannot be waived simply by responding to further police questioning.
[A]lthough we have held that after initially being advised of his Miranda rights, the accused may himself validly waive his rights and respond to interrogation, see North Carolina v. Butler, supra, 441 U.S. 369, at 372-376, 99 S.Ct. [1755], at 1757-1759 [60 L.Ed.2d 286 (1979)], the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that *1149 he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.
Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 378, 386 (1981) (footnote omitted). The Court has made clear that the Edwards rule applies even where "the police want to interrogate a suspect about an offense that is unrelated to the subject of their initial interrogation." Roberson, 486 U.S. at 677, 108 S.Ct. at 2096. In this connection, the Court "attach[ed] no significance to the fact that the officer who conducted the second interrogation did not know that respondent had made a request for counsel." Id. at 687, 108 S.Ct. at 2101.

Offense-Specific Sixth Amendment Rights Not Implicated
In McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158, 166 (1991), the Court distinguished between the Fifth Amendment right to counsel and the Sixth Amendment right to counsel, in addressing a question originally certified to the Wisconsin Supreme Court by the Wisconsin Court of Appeals:
Does an accused's request for counsel at an initial appearance on a charged offense constitute an invocation of his fifth amendment right to counsel that precludes police interrogation on unrelated, uncharged offenses?
When McNeil was arrested on charges of armed robbery and advised of his Miranda rights, he refused to answer any questions, and the interview was terminated, but he did not ask for a lawyer at that time. McNeil, 501 U.S. at 173, 111 S.Ct. at 2206. After an attorney had been appointed at his initial appearance, McNeil was questioned in jail regarding unrelated crimes, signed a waiver of his Miranda rights, and answered the questions, without counsel's presence or knowledge. Id. McNeil argued that his request for an attorney on the armed robbery charge was an invocation under Miranda of his Fifth Amendment right to counsel and that the subsequent, uncounseled waiver was invalid. Id. at 174, 111 S.Ct. at 2207.
The McNeil Court reaffirmed the rule that "once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present." McNeil, 501 U.S. at 177, 111 S.Ct. at 2208, citing Roberson, 486 U.S. 675, 108 S.Ct. 2093. But the Court ruled that McNeil's request for counsel invoked only his rights under the Sixth Amendment and held that "`[t]o find that [the defendant] invoked his Fifth Amendment right to counsel on the present charges merely by requesting the appointment of counsel at his arraignment on the unrelated charge is to disregard the ordinary meaning of that request.'" McNeil, 501 U.S. at 178-79, 111 S.Ct. at 2209, quoting State v. Stewart, 113 Wash.2d 462, 471, 780 P.2d 844, 849 (1989), cert. denied, 494 U.S. 1020, 110 S.Ct. 1327, 108 L.Ed.2d 502 (1990). The Court ruled that an invocation of the Miranda right to counsel "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." Id.

Open Question
Here Mr. Sapp unambiguously expressed a desire for and claimed the "right to counsel and the right to remain silent pursuant to Amendments 5 and 6 of the Constitution of the United States," without, however, any explicit reference to police custody or interrogation. Dissenting in McNeil, Justice Stevens wrote:
The predicate for the Court's entire analysis is the failure of the defendant at the preliminary hearing to make a "statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." Ante [111 S.Ct.] at 2208-2209. If petitioner in this case had made such a statement indicating that he was invoking his Fifth Amendment *1150 right to counsel as well as his Sixth Amendment right to counsel, the entire offense-specific house of cards that the Court has erected today would collapse, pursuant to our holding in Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), that a defendant who invokes the right to counsel for interrogation on one offense may not be reapproached regarding any offense unless counsel is present.
In future preliminary hearings, competent counsel can be expected to make sure that they, or their clients, make a statement on the record that will obviate the consequences of today's holding.
McNeil, 501 U.S. at 184, 111 S.Ct. at 2212 (Stevens, J., dissenting). The majority in McNeil responded to the dissent in a footnote.
We have in fact never held that a person can invoke his Miranda rights anticipatorily, in a context other than "custodial interrogation"  which a preliminary hearing will not always, or even usually, involve, (citations omitted). If the Miranda right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the Miranda right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect. Assuming, however, that an assertion at arraignment would be effective, and would be routinely made, the mere fact that adherence to the principle of our decisions will not have substantial consequences is no reason to abandon that principle. It would remain intolerable that a person in custody who had expressed no objection to being questioned would be unapproachable.
McNeil, 501 U.S. at 182, n. 3, 111 S.Ct. at 2211, n. 3. When Mr. Sapp initially asserted a Fifth Amendment right to counsel, he did so "outside the context of custodial interrogation." Although he was in custody, he was not being interrogated at the time, and no interrogation took place till a week later.
We have not found definitive Florida authority on the question whether a criminally accused citizen can assert the right to counsel under Miranda and Edwards at or shortly before his or her first appearance, when interrogation is not imminent. The Florida cases are clear, however, that mere invocation of the Sixth Amendment right to counsel does not avail in this regard. Happ v. State, 596 So.2d 991 (Fla. 1992); Owen v. State, 596 So.2d 985 (Fla. 1992); Keys v. State, 606 So.2d 669 (Fla. 1st DCA 1992); State v. Lints, 596 So.2d 523 (Fla. 5th DCA 1992). Appellant does not rely on his right to counsel under the Florida Constitution. See Traylor v. State, 596 So.2d 957 (Fla. 1992). At oral argument, his counsel expressly disavowed any state law claim.
The Supreme Court of Appeals of West Virginia and the Superior Court of Pennsylvania, each citing footnote 3 to the majority opinion in McNeil, have rejected the notion that the Fifth Amendment right to counsel can be invoked under Miranda when the accused is not in custody. State v. Bradshaw, 193 W. Va. 519, 457 S.E.2d 456 (1995) (holding that the defendant's attempt to invoke Miranda rights before being taken into custody was an "empty gesture"); Commonwealth v. Morgan, 416 Pa.Super. 145, 610 A.2d 1013 (1992), appeal denied, Commonwealth v. Morgan, 533 Pa. 618, 619 A.2d 700 (1993) (holding that even though "the police officer took the precautionary step of reading Miranda rights to a non-custodial suspect," the defendant could not assert the Fifth Amendment right to counsel outside the context of custodial interrogation). Accord, State v. Warness, 77 Wash. App. 636, 893 P.2d 665 (1995). Here, of course, Mr. Sapp was in custody when he invoked his Fifth Amendment right to counsel, in writing. But he declined, again in writing, to invoke his Miranda right to counsel in interrogation settings both before and after signing the form claim of rights.
*1151 Since McNeil, at least four federal courts of appeals have addressed the question whether the Fifth Amendment right to counsel explicated in Miranda can be invoked outside the context of custodial interrogation, and each has answered in the negative. United States v. LaGrone, 43 F.3d 332, 338-39 (7th Cir.1994) (holding that asking to call an attorney for advice on how to respond to a request for consent to search the accused's business did not invoke any right to counsel, on grounds a request for consent to search is not an interrogation); United States v. Thompson, 35 F.3d 100 (2nd Cir.1994) (holding that counsel's seeking certain records and filing a form "Notice of Entry of Appearance as Attorney or Representative" with the Immigration and Naturalization Service did not invoke the client's right not to respond to custodial interrogation without counsel present); Alston v. Redman, 34 F.3d 1237, 1249 (3rd Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995) (holding that pretrial detainee's signing form letter addressed but never delivered to prison warden, stating that defendant did not wish to speak to law enforcement personnel without a public defender present, was not an effective invocation of the Fifth Amendment right to counsel, in part because "no interrogation was impending or imminent"); United States v. Wright, 962 F.2d 953, 955 (9th Cir.1992) (holding that defense counsel's statement that she wished to be present during any interview of her client was not effective to invoke the client's Fifth Amendment right to counsel).
We acknowledge the logical force of Justice Stevens' dissent in McNeil, but we also recognize the McNeil majority's hesitation to apply the Miranda-Edwards rule to situations like the one in the present case, and the apparently unanimous view of the lower courts that the Court will not do so. We affirm accordingly. In so doing, we certify the following question to the Florida Supreme Court as a question of great public importance:
WHETHER AN ACCUSED IN CUSTODY EFFECTIVELY INVOKES HIS FIFTH AMENDMENT RIGHT TO COUNSEL UNDER MIRANDA WHEN, EVEN THOUGH INTERROGATION IS NOT IMMINENT, HE SIGNS A CLAIM OF RIGHTS FORM AT OR SHORTLY BEFORE A FIRST APPEARANCE HEARING, SPECIFICALLY CLAIMING A FIFTH AMENDMENT RIGHT TO COUNSEL?
ERVIN, J., concurs.
MINER, J., concurs in result and question certification.
NOTES
[1] In Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966), the United States Supreme Court held

[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.
(Footnote omitted.)
[2] He was furnished a form which stated:

YOUR CONSTITUTIONAL RIGHTS
You have the following rights under the United States constitution:
You do not have to make a statement or say anything.
Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before you make a statement or before any questions are asked of you, and to have the lawyer with you during any questioning.
If you cannot afford to hire a lawyer, one will be appointed for you before any questioning if you wish.
If you do answer questions, you have the right to stop answering questions at any time and consult with a lawyer.