690 So.2d 581 (1997)
Robert SAPP, Petitioner,
v.
STATE of Florida, Respondent.
No. 86622.
Supreme Court of Florida.
March 13, 1997.
*582 James T. Miller of Corse, Bell & Miller, P.A., Jacksonville, for Petitioner.
Robert A. Butterworth, Attorney General and Edward C. Hill, Jr., Assistant Attorney General, Tallahassee, for Respondent.
Raymond L. Marky, Special Assistant State Attorney, Special Counsel, Tallahassee; and Arthur I. Jacobs, General Counsel, Fernandina Beach, for The Florida Prosecuting Attorneys Association, Amicus Curiae.
GRIMES, Justice.
We have for review Sapp v. State, 660 So.2d 1146, 1151 (Fla. 1st DCA 1995), in which the district court certified the following question as one of great public importance:

*583 WHETHER AN ACCUSED IN CUSTODY EFFECTIVELY INVOKES HIS [OR HER] FIFTH AMENDMENT RIGHT TO COUNSEL UNDER [MIRANDA v. ARIZONA, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966),] WHEN, EVEN THOUGH INTERROGATION IS NOT IMMINENT, HE [OR SHE] SIGNS A CLAIM OF RIGHTS FORM AT OR SHORTLY BEFORE A FIRST APPEARANCE HEARING, SPECIFICALLY CLAIMING A FIFTH AMENDMENT RIGHT TO COUNSEL?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.[1]
Robert Sapp was originally arrested for a robbery unrelated to the charges at issue in this case. He was advised of his Miranda[2] rights, waived them, and agreed to speak to the police. After his arrest, he was taken to jail. Within twenty-four hours, he was brought to a holding room (along with others who had been arrested) for a "chute speech," a talk in which an attorney from the Public Defender's Office gives advice and explains first appearance court procedures. During the chute speech, the attorney also passed out copies of a "claim of rights form."[3] Sapp signed one of these forms and it was filed with the clerk of the court. As was the custom, copies of the signed form were sent to the Public Defender and the State Attorney, and one was stapled to Sapp's jail papers.
A week later while Sapp remained in jail on the original robbery charge, he was taken to the "homicide office," where a police detective initiated an interrogation concerning the facts of the present case. Before being questioned by the detective, Sapp was again advised of his Miranda rights in writing, and he waived them in writing. Without requesting an attorney, Sapp talked about the circumstances that gave rise to the present case and signed a written statement. Twelve hours later he was approached again. He signed a waiver form, agreed to talk to the detective, and signed a second written statement.
The trial court denied the motion to suppress the statements. Sapp was convicted of attempted armed robbery and first-degree felony murder. On appeal, the First District Court of Appeal determined that Sapp's attempt to invoke his Fifth Amendment right to counsel through the claim of rights form was not effective because custodial interrogation had not begun when he signed the form, nor was it imminent at the time. The court affirmed the convictions but certified the question to this Court.
We first examine whether an accused may invoke the right to counsel under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny when custodial interrogation is not at least imminent.[4] In Miranda, the United States Supreme Court ruled that statements made by an individual while under custodial interrogation may not be introduced as evidence against the individual unless he or she first has been informed of certain rights, including the right to have counsel present during *584 custodial interrogation. Id. at 444, 86 S.Ct. at 1612. These rights, commonly known as Miranda rights, are designed to protect an individual's Fifth Amendment right against compelled self-incrimination by offsetting the "inherently compelling pressures" of custodial interrogation. Id. at 467, 86 S.Ct. at 1624. Under Miranda, if an individual indicates that he or she wishes to consult an attorney, police must cease interrogation until after an attorney is made available. Id. at 445, 86 S.Ct. at 1612-13.
Subsequent Supreme Court cases have added to the original safeguards set out in Miranda. For example, the Court made clear in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), that once an individual has invoked the Miranda right to counsel, a valid waiver of this right can be found only if the individual is the one responsible for reinitiating contact with the police. Id. at 484-85, 86 S.Ct. at 1633-34. The Court further ruled in Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), that the "Fifth Amendment" right to counsel under Miranda is not offense-specific; that is, once an individual invokes the right to counsel for interrogation with respect to one offense, the police may not question the individual regarding any offense unless an attorney is present.[5]Id. at 677, 108 S.Ct. at 2095-96.
The cases summarized above address the consequences of an individual's invocation of the Fifth Amendment right to counsel under Miranda and its progeny. Yet none squarely addresses the question before us today of whether an individual may effectively invoke this right when custodial interrogation has not begun or is not imminent. The closest the Supreme Court has come to addressing this issue is in McNeil v. Wisconsin, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). In McNeil, the Court held that an accused's request for counsel at his initial appearance on a charged offense, while effective to invoke his Sixth Amendment right to counsel, did not constitute an invocation of his Miranda right to counsel that would preclude police interrogation on unrelated, uncharged offenses under Edwards. McNeil, 501 U.S. at 177-78, 111 S.Ct. at 2208-09. In so holding, the Court refused to merge the Sixth Amendment right to counsel, which is offense-specific, with the non-offense-specific Miranda right to counsel during interrogation.[6]
The portion of McNeil that is relevant to this case appears in the majority's response to Justice Stevens' dissent, in which he criticized the majority for maintaining a distinction between the right to counsel under the Fifth and Sixth Amendments. Justice Stevens predicted that a competent attorney could easily avoid the consequences of the majority holding by having clients in future preliminary hearings make a statement on the record invoking the right to counsel under both the Fifth and the Sixth Amendments. In a footnote, the majority responded:
We have in fact never held that a person can invoke his Miranda rights anticipatorily, in a context other than "custodial interrogation"which a preliminary hearing will not always, or even usually, involve. If the Miranda right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the Miranda right to counsel, once asserted, to be effective with respect to future custodial interrogation *585 does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.
McNeil, 501 U.S. at 182 n. 3, 111 S.Ct. at 2211 n. 3 (citations omitted). Although this statement constitutes dictum, at least three federal courts of appeal agree in the wake of McNeil that the Supreme Court, if presented with the issue, would not permit an individual to invoke the Miranda right to counsel before custodial interrogation has begun or is imminent. United States v. LaGrone, 43 F.3d 332 (7th Cir.1994); Alston v. Redman, 34 F.3d 1237 (3rd Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995); United States v. Wright, 962 F.2d 953 (9th Cir.1992); accord United States v. Grimes, 911 F.Supp. 1485 (M.D.Fla.1996); Cullen v. State, 687 So.2d 44 (Fla. 3d DCA 1997). We agree with this interpretation of McNeil.
The facts of Alston are particularly analogous to the case before us. In Alston, the defendant had been arrested for a series of robberies. He confessed to these and six other robberies after validly waiving his Miranda rights and was sent to prison for pretrial detention. A few days later, he was interviewed by someone from the public defender's office, during which time the defendant signed a form letter which stated that he would not speak to police without the presence of counsel. Nevertheless, when brought to the police station for processing on the six new robberies, the defendant was again read his Miranda rights for further questioning. The defendant waived his rights, and it was during this interrogation that the defendant confessed to yet another robbery. Alston, 34 F.3d at 1240-41.
The defendant attempted to exclude this second confession on the ground that the executed form letter was sufficient to invoke his Miranda right to counsel and prevent further police-initiated questioning. The Third Circuit Court of Appeals disagreed, concluding on the basis of McNeil that the Miranda right to counsel cannot be invoked outside the context of custodial interrogation. The court continued:
The antipathy expressed in McNeil towards the anticipatory invocation of the Miranda rights is consistent with Miranda `s underlying principles. The Miranda right to counsel is a prophylactic rule that does not operate independent from the danger it seeks to protect against"the compelling atmosphere inherent in the process of in-custody interrogation"and the effect that danger can have on a suspect's privilege to avoid compelled self-incrimination.
Alston, 34 F.3d at 1246 (quoting Miranda, 384 U.S. at 478, 86 S.Ct. at 1629-30). Because the defendant had signed the form while sitting in his jail cell with a representative from the public defender's office, he was "far removed from the strictures of custodial interrogation feared by the Miranda court." Alston, 34 F.3d at 1245. Thus, the second confession was admissible.[7]
We agree with the reasoning in Alston and find it entirely consistent with the underlying premise of Miranda. Miranda's safeguards were intended to protect the Fifth Amendment right against self-incrimination by countering the compulsion that inheres in custodial interrogation. "[T]he presence of both a custodial setting and official interrogation is required to trigger the Miranda right-to-counsel prophylactic.... [A]bsent one or the other, Miranda is not implicated." Alston, 34 F.3d at 1243 (citing Miranda, 384 U.S. at 477-78, 86 S.Ct. at 1629-30). See also Rhode Island v. Innis, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) ("[T]he special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation."). Accordingly, we conclude that the claim of rights form was not effective under federal law to invoke Sapp's Miranda right to counsel under these circumstances.
Sapp also argues that regardless of whether federal law permits an individual to *586 anticipatorily invoke the right to have counsel present during custodial interrogation, article I, section 9 of the Florida Constitution provides an independent basis for this right.[8] He relies on our statement in Traylor v. State, 596 So.2d 957, 966 (Fla.1992):
Under [Article I,] Section 9, .... [i]f the suspect indicates in any manner that he or she wants the help of a lawyer, interrogation must not begin until a lawyer has been appointed and is present or, if it has already begun, must immediately stop until a lawyer is present.
Although states may afford greater protection to the individual than the federal Constitution does, PruneYard Shopping Center v. Robins, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), we do not interpret article I, section 9 of the Florida Constitution as doing so here.
While Traylor contemplates that an individual may invoke the right to counsel before questioning begins, it cannot fairly be read to mean that a suspect may invoke the right at any time after being taken into custody. Cf. Arbelaez v. State, 626 So.2d 169 (Fla.1993) (holding that police were not required to give defendant his Miranda warnings during a telephone conversation with him where conversation occurred outside the context of custodial interrogation), cert. denied, 511 U.S. 1115, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994). We must keep in mind that the reason for informing individuals of their rights before questioning is to ensure that statements made during custodial interrogation are given voluntarily, not to prevent individuals from ever making these statements without first consulting counsel. Traylor, 596 So.2d at 964. As we recognized in Traylor, freely given, voluntary confessions are an unqualified good. Id. at 965. A rule allowing one to invoke the right to counsel for custodial interrogation before it is even imminent (whether it be through a claim of rights form or by any other means) would provide little additional protection against involuntary confessions but would unnecessarily hinder lawful efforts by police to obtain voluntary confessions. We believe that requiring the invocation to occur either during custodial interrogation or when it is imminent strikes a healthier balance between the protection of the individual from police coercion on the one hand and the State's need to conduct criminal investigations on the other.
We have considered Sapp's other arguments and find them to be without merit.
Accordingly, we answer the certified question in the negative and approve the decision of the district court. We also disapprove the decision in State v. Guthrie, 666 So.2d 562 (Fla. 2d DCA 1995), which conflicts with the opinion expressed above.
It is so ordered.
OVERTON, HARDING and WELLS, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which KOGAN, C.J., and SHAW, J., concur.
ANSTEAD, Justice, dissenting.
Today, the Fifth and Sixth Amendments to the United States Constitution and the parallel protections contained in the Florida Constitution have sustained a hard blow. By our ruling, we are holding, in essence, that the constitutional rights an accused is informed of when he is arrested[9] may not be invoked by the accused in writing in open court. In my view, this holding is contrary to our constitutional law, patently unreasonable, and relies upon a difference without a distinction.
The facts of this case are clear. Petitioner was arrested and apprised of his constitutional rights when he was taken into custody. He initially waived these rights and voluntarily submitted to questioning by police. After initially being subjected to the "inherently compelling pressures of custodial interrogation," petitioner signedupon the advice of an attorneya written declaration invoking his Fifth Amendment right to counsel for any future attempts at interrogation, and *587 thereafter reaffirmed his written claim of rights in open court at his first appearance. Petitioner's post-interrogation written declaration and subsequent reaffirmation of his Miranda rights in open court more than meet the McNeil requirement that a suspect must make, "at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991); see majority opinion at 584 n. 6.
Interestingly, under the majority's analysis, if petitioner had orally invoked his right to counsel at the end of his initial interrogation but before he appeared in court, then police could not have reinitiated contact with petitioner a week later, as they did here, and obtained the confessions in this case. See Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 378 (1981) (holding that someone who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him unless the accused himself initiates further communication, exchanges, or conversations with the police"); Durocher v. State, 596 So.2d 997 (Fla.1992) (same as Edwards). Yet, the majority holds that petitioner's later written and signed invocation of his rights in open court after having once submitted to the pressures of police questioning and thereafter deciding that it was not in his interest to talk to the police without the presence of his lawyer, is invalid. Under this strained logic, a written directive executed upon the advice of counsel may be ignored by police even though an uncounseled oral assertion must be scrupulously honored.
Moreover, the majority's basis for this purported distinctiondicta in McNeil, where the majority in that case mentions in a footnote that the Court has yet to hold that a suspect may "anticipatorily" invoke his or her rights in a context other than "custodial interrogation"is really not germane to the issue before us. In this case, petitioner did not "anticipate" that he might be questioned and preemptively invoke his rights. Instead, petitioner explicitly invoked his Fifth Amendment rights precisely in the context of and after having been subjected to "custodial interrogation." Petitioner first directly experienced the inherent pressures of adversarial police questioning and then, in its wake, signed a written declaration of his rights to ensure that he would not be approached and questioned again except by his own choosing. He then reasserted these rights in open court. These actions clearly meet the McNeil standard.
Today's holding directly conflicts with the decision in the seminal case of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), wherein the United States Supreme Court declared:
If the individual desires to exercise his privilege, he has the right to do so. This is not for the authorities to decide. An attorney may advise his client not to talk to police until he has had an opportunity to investigate the case, or he may wish to be present with his client during any police questioning. In doing so an attorney is merely exercising the good professional judgment he has been taught. This is not cause for considering the attorney a menace to law enforcement. He is merely carrying out what he is sworn to do under his oathto protect to the extent of his ability the rights of his client. In fulfilling this responsibility the attorney plays a vital role in the administration of criminal justice under our Constitution.
Id. at 480-81, 86 S.Ct. at 1631. Today's holding is not only contrary to both the letter and spirit of Miranda, but also undermines one of the fundamental principles of that decision: to ensure that the sophisticated (and usually of means) and the unsophisticated (and usually without means) are treated alike:
If an individual indicates that he wishes the assistance of counsel before any interrogation occurs, the authorities cannot rationally ignore or deny his request on the basis that the individual does not have or cannot afford a retained attorney. The financial ability of the individual has no relationship to the scope of the rights involved *588 here. The privilege against self-incrimination secured by the Constitution applies to all individuals. The need for counsel in order to protect the privilege exists for the indigent as well as the affluent. In fact, were we to limit these constitutional rights to those who can retain an attorney, our decisions today would be of little significance. The cases before us as well as the vast majority of confession cases with which we have dealt in the past involve those unable to retain counsel. While authorities are not required to relieve the accused of his poverty, they have the obligation not to take advantage of indigence in the administration of justice. Denial of counsel to the indigent at the time of interrogation while allowing an attorney to those who can afford one would be no more supportable by reason or logic than the similar situation at trial and on appeal struck down in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).
384 U.S. at 472-73, 86 S.Ct. at 1626-27 (footnotes omitted). Moreover, our own prior decisions interpreting the Florida constitution unequivocally support the same conclusion.
In the landmark decision of Traylor v. State, 596 So.2d 957 (Fla.1992), we addressed a suspect's rights under article 1, section 9 of the Florida Constitution:
Under Section 9, if the suspect indicates in any manner that he or she does not want to be interrogated, interrogation must not begin or, if it has already begun, must immediately stop. If the suspect indicates in any manner that he or she wants the help of a lawyer, interrogation must not begin until a lawyer has been appointed and is present or, if it has already begun, must immediately stop until a lawyer is present. Once a suspect has requested the help of a lawyer, no state agent can reinitiate interrogation on any offense throughout the period of custody unless the lawyer is present....
596 So.2d at 966. The above language from Traylor clearly supports petitioner's independent claim of rights under Florida law to not have interrogation begin without the presence of his lawyer. Are we simply to ignore what we said in Traylor? We should not.
Instead, I would adopt Judge Blue's good-sense majority opinion addressing this precise issue in State v. Guthrie, 666 So.2d 562 (Fla. 2d DCA 1995), review granted, 677 So.2d 841 (Fla.1996):
We cannot agree with the holding in Sapp because it seriously undermines the clearly established right to counsel during custodial interrogation under the Fifth Amendment to the United States Constitution. See Miranda. A defendant, having declared in plain terms that he does not wish to be questioned without assistance of his attorney, could be removed from the jail, taken to an interrogation room without notice to counsel, and required again to insist on the right to counsel while facing alone the authority of the state.
The state's argument, that allowing the invocation of rights prior to interrogation would lead to invoking the right to counsel prior to arrest or even the commission of a crime, is without merit. Custodial interrogation triggers a defendant's right to counsel and there is no logical reason why the right to counsel could not be validly invoked upon the defendant being placed in custody. See Roberson, 486 U.S. at 687, 108 S.Ct. at 2101.
Id. at 563 (footnote omitted). As the court noted in Guthrie, under the majority's reasoning here, the police could repeatedly interrogate a defendant in jail and that defendant would have to continuously and repeatedly reassert the right to counsel each and every time he or she was questioned even though the defendant had previously asserted this right in writing and in open court.[10] In other words, a defendant's direct, written invocation of his or her constitutional rights is meaningless. The majority finds that under its *589 "imminency" standard, a defendant like Sapp, who is in custody with the adversarial powers of the State mounted against him, is severely limited to invoking his Fifth Amendment right to counsel only until he is actually sitting across the table from a police officer in an interview room and facing interrogation. Further, in my view, the majority gets it wrong even under its own standard. Surely, a defendant sitting in jail facing criminal charges likely believesand reasonably so especially once he has already been interrogated by the policethat he will be questioned by police again in the very near future, i.e., "imminently." That immediate past experience of actual interrogation conclusively establishes the reasonableness of a defendant's expectation of continued interrogation.
If we are to honor the letter and spirit of the rules and principles laid out in Miranda and our decision in Traylor, we should find that petitioner properly invoked his Fifth Amendment right to counsel where, in the wake of actual police custodial questioning, he consulted with an attorney, made a written declaration invoking his rights, and reaffirmed his claim of rights in open court.
KOGAN, C.J., and SHAW, J., concur.
NOTES
[1] We note that the Second District Court of Appeal in State v. Guthrie, 666 So.2d 562 (Fla. 2d DCA 1995), certified conflict with the instant case.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The form reads:

DEFENDANT'S CLAIM OF RIGHTS
1. The Defendant, together with the undersigned counsel, the Public Defender ..., hereby asserts his/her right not to make any statements, oral or written, regarding the facts or circumstances of the offense(s) with which he/she is charged, or regarding the facts or circumstances of any criminal offenses for which he/she is not charged (but is merely a witness or suspect), unless his/her attorney is present during any questioning and/or making of any such statements. The Defendant claims his/her right to counsel and the right to remain silent pursuant to Amendments 5 and 6 of the Constitution of the United States.
2. Defendant further asserts that any future waiver of the right to have counsel present or to remain silent must be in writing (with reference to this notice), and only after notice has been given to his/her attorney of the Defendant's intention to waive this right and an opportunity provided for the Defendant and his/her attorney to discuss the waiver of these rights.
(Emphasis added.)
[4] Sapp concedes that the Sixth Amendment right to counsel is not at issue in this case.
[5] Clearly, if Sapp had invoked his Miranda right to counsel during custodial interrogation on the unrelated robbery charge, police would not have been permitted to approach him later for questioning on the robbery and murder at issue here. Roberson. However, there is nothing in the record to suggest this occurred. To the contrary, the record reflects that Sapp had already once waived his Miranda rights and given a statement on the unrelated charge.
[6] The Court held that to invoke the separate and distinct Miranda right to counsel, a suspect must make, "at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." McNeil, 501 U.S. at 178, 111 S.Ct. at 2209.
[7] Although the Alston court also held that the letter was insufficient because it had never been delivered to investigating officials, this was an alternative ground for the court's decision. Thus, we do not find this fact sufficient to distinguish Alston from the case before us.
[8] Article I, section 9 states that "No person shall... be compelled in any criminal matter to be a witness against himself."
[9] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[10] Apparently, the rationale of the majority is that allowing a defendant in custody to assert his Fifth Amendment right to counsel in writing will prevent the police from talking to a suspect, even if the suspect wants to provide information. This is an empty concern and simply a nonissue. Everyone agrees, of course, that under any scenario, whether a right is asserted orally during interrogation or in writing while in custody, a suspect can always reinitiate contact with the police. Edwards; Durocher. In this case, petitioner's invocation of rights in no way precluded him from initiating contact with police. Rather, the written claim of rights sought only to prevent the reinitiation of contact by police unless counsel was notified, a right that petitioner was expressly informed he possessed when police read him his Miranda rights, and a right expressly enforced in McNeil.