754 So.2d 869 (2000)
STATE of Florida, Appellant,
v.
Sarah Lakesha STANLEY, Appellee.
No. 1D98-3881.
District Court of Appeal of Florida, First District.
April 12, 2000.
Robert A. Butterworth, Attorney General; Edward C. Hill, Jr., Assistant Attorney General; James W. Rogers, Assistant Attorney General, Tallahassee, for Appellant.
J. Craig Williams and Shelley L. Thibodeau, Jacksonville, for Appellee.
BENTON, J.
The state appeals a written, pre-trial order granting the motion to suppress statements Sarah Lakesha Stanley gave while in custody in response to questions law enforcement officers asked in her lawyer's *870 absence despite his request to be present. Concluding the statements in question were obtained in violation of her right to counsel under article I, section 16 of the Florida Constitution, we affirm.
We have jurisdiction. Florida Rule of Appellate Procedure 9.140(c)(1)(B) authorizes appeals from pretrial orders suppressing admissions. See Art. V, § 4(b)(1), Fla. Const. (declaring interlocutory orders reviewable by district courts of appeal "to the extent provided by rules adopted by the supreme court"). Section 924.07(1)(l), Florida Statutes (Supp.1998), also provides that the state may take an appeal from an "order ... suppressing evidence ... in limine...." But the "`Constitution does not authorize the legislature to provide for interlocutory review.'" State v. Smith, 260 So.2d 489, 491 (Fla.1972) (quoting State v. Smith, 254 So.2d 402, 404 (Fla. 1st DCA 1971)) ("`Any statute purporting to grant interlocutory appeals is clearly a declaration of legislative policy and no more ... unless [by rule] the Supreme Court of Florida adopts such statute as its own....'").
Learning that a warrant had issued for her arrest, Ms. Stanley consulted an attorney, James Williams, who agreed to represent her, informed her of various constitutional rights she had, and advised her not to speak to anyone about the attempted murder of which she was suspected, unless he was present. Then, as arranged by Mr. Williams, Ms. Stanley went with his receptionist and an intern to the Police Memorial Building and turned herself in. The receptionist advised jail personnel that Ms. Stanley was represented by counsel and that she was not to be questioned unless Mr. Williams was present.
When Mr. Williams, who was seeking to obtain a reduction of Ms. Stanley's bond, learned that a detective had taken her to an interview room, he called the Jacksonville Sheriffs office, spoke to Detective Gilbreath, and reiterated his request that Ms. Stanley not be questioned in his absence.[1] This request was relayed to Detective Nelson, but Detective Nelson decided not to honor the request, and went forward with interrogation.
Eventually, Ms. Stanley filed a motion to suppress statements she made to Detective Nelson, asserting that she had been questioned in violation of the Fifth and Sixth Amendments to the United States Constitution and sections 9 and 16 of article I of the Florida Constitution. In its order granting Ms. Stanley's motion to suppress, the trial court set out findings of fact and conclusions of law:
1. The facts in issue are not subject to material dispute as to the critical issue pertaining to the motion.
2. Defendant, through her attorney, was surrendered to the Jacksonville Sheriffs Office based on a two year old warrant for her arrest. Arrangements had been made by her attorney for her to surrender, which she did on February 20, 1998, at the Police Memorial Building.
3. Defendant's attorney had advised the officers that defendant was not to be interviewed without his presence. Notwithstanding this request, defendant was taken to the homicide office by Detective Nelson, even though he was *871 aware that defendant was represented by an attorney who had asked that she not be questioned, the detective proceeded to ask the defendant questions concerning the charge for which she had been arrested.
4. Defendant personally advised the detective that she was represented by an attorney and that she had been told not to speak to the police. However, after the detective advised defendant of her Miranda rights, defendant proceeded to make the statements which are the subject of this motion. There is no dispute that it was the detective who initiated the interview.
5. When Mr. Williams, Stanley's attorney, was advised by his assistan[ts] that defendant had been taken to be interviewed by detectives, he immediately called Detective Gilbreath and once again reiterated the conditions of the surrender, i.e. defendant was not to be interviewed without the attorney being present.
Defendant submits that under her Fifth and Six[th] Amendment rights provided under the U.S. Constitution and her similar state constitutional rights, the statements made by her should be suppressed. Under the facts as summarized above, the court concurs.
Under the self-incrimination clause of the Federal and State Constitutions, if a suspect indicates in any manner that she does not want to be interrogated, then the questioning must not begin. The U.S. Supreme [C]ourt has ruled that once a defendant invokes his right to the presence of an attorney, the defendant is not subject to further interrogation until counsel is available, unless the defendant initiates the conversations with the police. If the police proceed to interrogate a defendant after an invocation of the right to counsel, any waiver of the defendant's right to counsel for police "initiated interrogation" is invalid.
(Citations omitted.) The trial court's findings of fact come to us clothed with a presumption of correctness. See Shapiro v. State, 390 So.2d 344, 346 (Fla.1980); State v. Nova, 361 So.2d 411, 412 (Fla. 1978); State v. Setzler, 667 So.2d 343, 346 (Fla. 1st DCA 1995) (holding that, on review of an order on a motion to suppress, the trial court's findings of fact bind an appeals court, unless the findings are clearly erroneous).
Given the trial court's findings and conclusions and the record on which they are based, we need not tarry long over the state's first two contentions, viz., that Ms. Stanley was not in custody when she made the statements and that Detective Nelson did not initiate the interview. The trial court's legal analysis assumes custodial interrogation or "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); California v. Beheler, 463 U.S. 1121, 1123, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). See also Setzler, 667 So.2d at 346 (holding reviewing court bound by fact findings "even if only implicit"). The record shows that an arrest warrant was outstanding when Ms. Stanley was led to the interview room and that Detective Nelson began the interview, recounting for Ms. Stanley information he had about the case. At the evidentiary hearing below, moreover, the state conceded that Ms. Stanley was subjected to custodial interrogation.
The state also argues that Ms. Stanley's state and federal[2] constitutional *872 rights were not infringed, even assuming uncounselled custodial interrogation. In keeping with principles of federalism enunciated by the Florida Supreme Court, "we examine the [circumstances surrounding Ms. Stanley's making statements] initially under our state Constitution; only if they pass muster here need we re-examine them under federal law." Traylor v. State, 596 So.2d 957, 961 (Fla.1992). Under article I, section 16 of the Florida Constitution, a criminally accused person's right to counsel arises when the person is
formally charged with an offense, or as soon as feasible after custodial restraint or upon his first appearance before a committing magistrate, whichever occurs earliest.
In other words, a defendant is entitled to counsel at the earliest of the following points: when he or she is formally charged with a crime via the filing of an indictment or information, or as soon as feasible after custodial restraint, or at first appearance.
Traylor, 596 So.2d at 969-70 (quoting Florida Rule of Criminal Procedure 3.111 and stating that the rule is grounded in sections 2 and 16 of the Florida Constitution) (citations omitted and emphasis supplied). Because Ms. Stanley had retained counsel before she turned herself in on account of an outstanding arrest warrant, her right to counsel arose under the state constitution at the moment she was taken into custody.
Feasibility is not in doubt. Since she informed her interrogators that she had retained Mr. Williams, they could have made counsel available before initiating the interrogation simply by telephoning. Mr. Williams had himself also made it clear that he was representing Ms. Stanley, and explicitly asked to be informed so he could be present in the event she was to be interviewed. Detective Nelson could have let Mr. Williams know of his intention to question Ms. Stanley before initiating interrogation and invited him to be present but chose not to do so.
Not only had her right to counsel arisen under the Florida Constitution but she had also exercised the right by retaining counsel, and so informed her interlocutors. Counsel had, moreover, requested that Ms. Stanley not be questioned without his assistance while in custody. The Florida Supreme Court has stated:
Under Section 9, if the suspect indicates in any manner that he or she does not want to be interrogated, interrogation must not begin or, if it has already begun, must immediately stop. If the suspect indicates in any manner that he or she wants the help of a lawyer, interrogation must not begin until a lawyer has been appointed and is present or, if it has already begun, must immediately stop until a lawyer is present. Once a suspect has requested the help of a lawyer, no state agent can reinitiate interrogation[[3]] on any offense throughout the *873 period of custody unless the lawyer is present....
Traylor, 596 So.2d at 966. The state maintains, however, that the repeated, timely requests and demands proven below were ineffective to invoke Ms. Stanley's right to counsel during her interrogation. In support of this contention,[4] the state relies principally on Valle v. State, 474 So.2d 796 (Fla.1985), vacated on other grounds, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986). We conclude Valle is distinguishable.
After Valle's arrest but at the scene, the arresting officers contacted an assistant public defender who spoke to Valle on the telephone and told him not to talk to anyone about the case. Valle argued that because the assistant public defender also instructed the officers who had arrested him not to question him, his right to counsel had been invoked. The Florida Supreme Court rejected the argument, stating:
The determination of the need of counsel is the defendant's prerogative. Thus, just as his attorney would have no right to waive appellant's right to counsel, without his consent, she likewise would have no right to unilaterally invoke that right.
Valle, 474 So.2d at 799 (citation omitted). As the policemen knew, the assistant public defender in Valle had not been appointed when she told the arresting officers not to interrogate Valle. In legal contemplation, she was a stranger to the defendant, a mere interloper. The decision in Valle is fully explained on the premise that a lawyer whom the accused has not retained and no court has appointed lacks authority to speak on behalf of the accused.
The present case is very different. Here Ms. Stanley went to Mr. Williams's office and retained him to represent her on the charge for which the arrest warrant had issued. When she retained Mr. Williams, Ms. Stanley necessarily authorized him to speak on her behalf (as he in fact did in arranging her surrender). At the time she turned herself in, her captors were again informed that she had retained counsel. At that point[5] as well as later (when he telephoned), the attorney she had retained got word to the authorities word which actually reached her custodial interrogator before interrogation began that he was representing Ms. Stanley and that she was not to be interviewed without his being present. The detective who interrogated Ms. Stanley admitted that he was aware that she had retained an attorney and that the attorney did not want her interviewed in his absence. We reject the state's contention that Mr. Williams lacked authority to invoke his client's right to counsel under these circumstances.
The present case should also be distinguished from cases in which a person for whom counsel has been appointed or retained on one charge is at some later time interrogated with respect to a completely different crime after waiving the right to counsel in the interrogation about the unrelated offense. A recent case of this kind is Sapp v. State, 690 So.2d 581 (Fla.1997). Sapp was arrested on a robbery charge and advised of his Miranda rights, which he waived, agreeing to speak to the police. Thereafter, however, at first appearance *874 on the robbery charge, he signed a claim of rights form invoking his Fifth and Sixth Amendment rights to counsel.
A week later, while still in jail on the robbery charge, he was taken to the homicide office, where a police detective initiated an interrogation about a murder. Before being questioned about the murder, he was again advised of his Miranda rights, and waived them in writing before giving a written statement concerning the murder. Twelve hours later he was approached again, signed another waiver form, again agreed to talk to the detective, and signed a second written statement concerning the murder.
Approving affirmance of the denial of Sapp's motion to suppress, our supreme court held that signing the claim of rights form at first appearance on the robbery charge was not effective to invoke Fifth Amendment[6] rights to counsel anticipatorily as to interrogation one week later on the unrelated murder. The court held that Sapp could not invoke his right to counsel on the murder charge before custodial interrogation had begun or was imminent and before formal accusation or arrest on the murder charge. See Sapp, 690 So.2d at 585. The public defender's office had been appointed to represent Sapp only on the robbery charge.[7]
*875 Ms. Stanley was not interrogated in the present case about an offense for which she had not retained counsel. She had obtained legal representation for the only offense of whichas far as this record revealsshe has ever been accused, the very offense that was the subject of the interrogation at which her lawyer was not present. Nor was invocation of the right to counsel at custodial interrogation premature.[8] The last invocation came in the nick of time, albeit to no avail.
Because the right to counsel guaranteed by article I, section 16 of the Florida Constitution had attached, Ms. Stanley having retained counsel prior to her arrest who was ready and willing to assist her, the authorities could not lawfully initiate an interview in the absence of the lawyer whom she had retained to represent her, her right to counsel at custodial interrogation having been invoked. We need not reach the parties' federal constitutional contentions. We do, however, certify the following question as one of great public importance:

MAY COUNSEL INVOKE A CLIENT'S RIGHT UNDER ARTICLE I, SECTION 16 OF THE FLORIDA *876 CONSTITUTION TO HAVE COUNSEL PRESENT DURING CUSTODIAL INTERROGATION?
The order granting the motion to suppress statements is affirmed.
ALLEN and BROWNING, JJ., CONCUR.
NOTES
[1] Mr. Williams testified that he contacted Detective Gilbreath upon notification by his staff that Ms. Stanley had been taken from the jail to the homicide office:

I indicated to him, and I understood that personnel from my office, in the presence of Ms. Stanley, had indicated to him that they didn't want her to be questioned. He indicated to me that they had no authority to indicate to him or tell him in essence what he could or could not do.
And I indicated that as her counsel, that we were requesting and demanding as it were that no one would question her or interrogate her. And, I think I had even specifically asked that prior to any of that, exceptionally the questioning as it were to be attempted, that Detective Nelson contact me or our office.
As the order under review reflects, the trial court evidently credited this testimony.
[2] The state contends that, because she did not in her own words invoke her Fifth Amendment right to counsel before talking to the police, Ms. Stanley effectively waived that right. Additionally, the state asserts that Ms. Stanley had no Sixth Amendment right to counsel at the time of the interview as no information or indictment had then been filed.
[3] This approach parallels the rule laid down in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). See Traylor v. State, 596 So.2d 957, 968 & n. 30 (Fla.1992). Cf. Michigan v. Jackson, 475 U.S. 625, 635 n. 9, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986):

After stating our holding that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights," [Edwards v. Arizona,] 451 U.S., at 484, 101 S.Ct., at 1884, we appended this footnote:
"In Brewer v. Williams, 430 U.S. 387 [97 S.Ct. 1232, 51 L.Ed.2d 424] (1977), where, as in Massiah v. United States, 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246] (1964), the Sixth Amendment right to counsel had accrued, the Court held that a valid waiver of counsel rights should not be inferred from the mere response by the accused to overt or more subtle forms of interrogation or other efforts to elicit incriminating information. In Massiah and Brewer, counsel had been engaged or appointed and the admissions in question were elicited in his absence.
The same rule applies whether the right to counsel is invoked under the Fifth or Sixth Amendment to the United States Constitution or section 9 or 16 of article I of the Florida Constitution.
[4] Because we reject the state's contention, we need not explore the possibility that the receptionist's invocation of the same right, apparently in Ms. Stanley's presence and hearing, was independently efficacious, being a personal demand Ms. Stanley adopted by silence. Once Ms. Stanley had retained counsel on the charge about which law enforcement officers wanted to question her, it was immaterial how they learned Mr. Williams was her lawyer.
[5] At this juncture, the lawyer, if not Ms. Stanley herself, see ante at 873 n. 4, spoke through the receptionist he sent to accompany Ms. Stanley.
[6] The court identified "the question before us" as "whether an individual may effectively invoke" "the Fifth Amendment right to counsel under Miranda and its progeny ... when custodial interrogation has not begun or is not imminent." The court said:

The closest the Supreme Court has come to addressing this issue is in McNeil v. Wisconsin, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). In McNeil, the Court held that an accused's request for counsel at his initial appearance on a charged offense, while effective to invoke his Sixth Amendment right to counsel, did not constitute an invocation of his Miranda right to counsel that would preclude police interrogation on unrelated, uncharged offenses under Edwards. McNeil, 501 U.S. at 177-78, 111 S.Ct. at 2208-09. In so holding, the Court refused to merge the Sixth Amendment right to counsel, which is offense-specific, with the non-offense-specific Miranda right to counsel during interrogation.
Sapp v. State, 690 So.2d 581, 584 (Fla.1997). Our supreme court eschewed such a "merger" of analytically distinct federal rights and went on to suggest that a similar dichotomy under the Florida Constitution precluded finding a single unified right to counsel under article I.
[7] The state also relies on Durocher v. State, 596 So.2d 997 (Fla.1992), which is similar. While in jail awaiting sentencing for one murder, Durocher initiated contact with the police and confessed to another murder. The public defender's office that represented him on the murder of which he had been convicted had filed an "Edwards notice" with the sheriff's office, asking that the authorities not talk to Durocher without notifying the public defender's office. Before talking to Durocher, a detective showed him the Edwards letter and asked him if he wanted to talk to the attorney appointed to represent him on the first murder charge. Durocher said he did not, was read his Miranda rights, signed a waiver, and confessed to the new murder. In denying the defendant's motion to suppress, the court relied on the fact that Durocher had initiated contact with the detective and expressed his desire to waive his Fifth Amendment rights regarding the new murder. When Durocher confessed to the new murder, he had not been charged with that crime. See Durocher, 596 So.2d at 999.

In Owen v. State, 596 So.2d 985 (Fla.1992), Owen contended that a murder confession was obtained in violation of his Sixth Amendment right to counsel. Originally arrested for burglary, he requested and received appointed counsel on the burglary charges. During subsequent police-initiated questioning, Owens confessed to the murder. Our supreme court held that Owens's right to counsel on the murder charge did not attach until he attended first appearance on that offense. Since he confessed prior to that time, no Sixth Amendment right to counsel had been violated, the court held. See Owen, 596 So.2d at 989.
In Happ v. State, 596 So.2d 991 (Fla.1992), Happ appealed denial of his motion to suppress statements he made to Florida investigating officers concerning a murder while he was in jail on unrelated robbery and kidnapping charges in California. The Florida investigators, who were aware that Happ was represented by counsel on the California charges, advised him of his Miranda rights, after which he signed a waiver and agreed to talk to them about the Florida offense. The Florida Supreme Court affirmed denial of the motion, holding that questioning Happ, after he had signed a Miranda waiver, while he was jailed in California for charges unrelated to the Florida investigation did not violate his right to counsel even though he had invoked his right to counsel on the California charges. See Happ, 596 So.2d at 996.
Similarly, in Traylor the Florida Supreme Court found no violation of Traylor's section 16 right to counsel as to a Florida offense. Traylor had been charged with two murders, one in Alabama and one in Florida. Two days before the interrogation in which Traylor confessed, the lawyer representing him on the Alabama offense told the Alabama police not to talk to his client in his absence. But the Florida detective who interviewed him about the Florida crime did not know that counsel had been appointed in Alabama when he initiated questioning.
With respect to Traylor's section 16 right to counsel claim, the court held that there was no violation as to the Florida offense since Traylor had not yet retained or been appointed counsel for the Florida crime and had intelligently and voluntarily waived his section 16 rights anent the Florida crime when he made his confession. See Traylor, 596 So.2d at 972-73. The court's holding that there was no section 9 violation because the defendant never personally invoked his right to counsel, see id. at 971, necessarily applied to the Florida offense, the only case before the court. The court stated:
In his motion to suppress, Traylor claimed that both confessions were obtained in violation of his Section 16 right to counsel. We agree as to the Alabama offense. Traylor was arrested and charged with the Alabama offense on August 6, and had counsel appointed at a preliminary hearing on August 18. Under Florida law, the Section 16 right attaches at charging [or earlier, as soon as feasible after custodial restraint on the pertinent charge]. Because Traylor subsequently requested counsel at the preliminary hearing and a lawyer was appointed, Florida police were constitutionally barred from initiating any crucial confrontation with him on that charge in the absence of his lawyer for use in a Florida court. The confession to the Alabama murder that was obtained by Florida police through police-initiated questioning after counsel was appointed was thus obtained in violation of Section 16 and was inadmissible in the Florida proceeding.
Id. at 972. Traylor's Alabama lawyer had not been retained on the Florida offense, and had no authority to waive or to invoke the right to counsel for an unrelated offense. There was, however, a violation as to the Alabama confession. The present case is like the Alabama case.
[8] It is clear from context that the Sapp court was addressing the right to counsel under the Fifth Amendment and article I, section 9 when it said:

A rule allowing one to invoke the right to counsel for custodial interrogation before it is even imminent (whether it be through a claim of rights form or by any other means) would provide little additional protection against involuntary confessions but would unnecessarily hinder lawful efforts by police to obtain voluntary confessions. We believe that requiring the invocation to occur either during custodial interrogation or when it is imminent strikes a healthier balance between the protection of the individual from police coercion on the one hand and the State's need to conduct criminal investigations on the other.
690 So.2d at 586. Invocation of the right to counsel under the Sixth Amendment and article I, section 16 need not await custodial interrogation or its imminent onset. In any event, interrogation was imminent when Mr. Williams spoke to Detective Gilbreath.