967 So.2d 951 (2007)
Adrian McKENNEY, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-871.
District Court of Appeal of Florida, Third District.
October 3, 2007.
Rehearing Denied November 8, 2007.
*952 Bennett H. Brummer, Public Defender, and Thomas Regnier, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.
Before COPE, RAMIREZ and SALTER, JJ.
SALTER, J.
Adrian McKenney ("McKenney") appeals from his convictions and sentences for second degree murder with a firearm, *953 attempted voluntary manslaughter with a firearm, and violation of his probation. We affirm the jury's verdict and each of the circuit court's challenged rulings regarding the speedy trial rule, certain comments made by counsel for the State in closing argument, and the use of an AK-47 semiautomatic weapon for demonstrative purposes.

I. Speedy Trial

McKenney was arrested and charged on January 28, 2004 with the second degree murder with a firearm of Deririck Jackson and the attempted second degree murder with a firearm of Lisa Dixon. During March and April, 2004, defense counsel filed three notices of discovery.
On May 10, 2004, defense counsel filed a motion to compel discovery and for sanctions. Two days later the trial court entered an order compelling discovery of certain items by May 21, 2004. The case was set for trial commencing July 12, 2004. On July 7, 2004, the defense served a notice of alibi. Fla. R.Crim. P. 3.200 specifies that such a notice shall be filed at least ten days before trial, rather than the five days provided here. The State advised the trial court that the State would be ready for trial if the defense withdrew the alibi notice, but that it would request a defense-charged continuance if the alibi notice was not withdrawn.
The 175-day period provided by Fla. R.Crim. P. 3.191(a) was to expire July 21, 2007. The trial court charged the continuance jointly to the State and the defense, and the trial ultimately began on December 13, 2004. In the interim, McKenney filed notices of expiration of the speedy trial period on August 26, 2004 and October 27, 2004 and moved for final discharge based on Rule 3.191, but the trial court denied the motion. We review that denial, and the characterization of the continuance as "joint" rather than "State," for abuse of discretion.
Rule 3.191(j)(2) sets forth one of the exceptions to the speedy trial rule when "the failure to hold trial is attributable to the accused, a codefendant in the same trial, or their counsel." In this case, the accused and his counsel share responsibility for the continuance because they did not file a timely notice of alibi. McKenney waived his right to discharge under the speedy trial rule when he declined to withdraw the untimely notice of alibi and proceed to trial on July 12, 2004 as scheduled. While McKenney argues that the notice of alibi was served late because of the State's discovery violations, McKenney had ample time between May 21, 2004 (the discovery compliance date ordered by the trial court) and July 2, 2004 within which to bring any remaining discovery issues to the trial court's attention. In addition, McKenney did not explain how or why the alleged discovery problems delayed his filing and service of the notice of alibi. The purported alibi witnesses were McKenney's grandmother and uncle, living in Carol City, who would have testified that McKenney was in Carol City at the time of the shooting. This information was elicited by the defense itself and was not dependent on the allegedly-late State discovery (Transcript of July 9, 2004 Hearing at 295-296 [hereinafter "T. at ___"]).
Under those circumstances, it was not an abuse of discretion for the trial court to charge the continuance jointly rather than only to the State. The continuance might not have been granted, or if granted might have been attributed to the State, had McKenney withdrawn the untimely notice of alibi, but he declined to do so. We therefore conclude that the trial court committed no error in characterizing the continuance as a joint continuance and in denying the motion for final discharge. State v. Naveira, 873 So.2d 300, 306 (Fla. *954 2004); Rodriguez v. State, 933 So.2d 1263 (Fla. 3d DCA 2006).

II. State's Closing Argument

McKenney argues that certain comments by the State during its closing argument were prejudicial and improper, and that the trial court erred by denying a defense motion for mistrial after the comments were made.
Throughout the trial, the defense focused on two pointsthat a large number of persons, perhaps as many as fifty, were at the site of the shootings, and that only one eyewitness was brought forward by the State. Before the trial, McKenney sought and obtained an order in limine precluding the State from presenting to the jury any evidence or comments that "the witnesses in the Liberty City neighborhood do not come forward to the police or are scared to talk to the police, as this opinion testimony is inadmissible and requires the police officer to testify as to what is in a third-person's mind" (R. at 121).
During initial closing argument, defense counsel again focused on the disparity between the number of likely witnesses and the single eyewitness presented by the State. Addressing the testimony of the first police officer to arrive on the scene, defense counsel said:
When he got there he observed approximately fifty people in the area, and the only witness's name, the only name he came up with, someone named Lisa Francis, who is supposed to be Mr. Jackson's sister, who supposed [sic] to be a witness to the case (T. at 664-65).
Defense counsel repeatedly emphasized the fact that the State had only offered the testimony of Ms. Tillman and that none of the other persons observed at the scene had given testimony:
To watch Miss Tillman, this is a one-witness case (T. at 672).
There aren't any witnesses at all who put Miss Tillman there (T. at 675).
[S]he is the only witness to the shooting that occurred (T. at 678).
. . . and how is it that the detective, the original officer who arrived there, said, "there are fifty people in the area." There is not one other witness to this thing or one other witness to at least say that, at least Miss Tillman was there, one other witness who can corroborate anything in this case, whatsoever, there (T. at 678-79).
There are fifteen, twenty people when the shooting took place, fifteen or twenty adults (T. at 681).
Well, there is no other evidence in the case, and there is no other testimony in this case as to who did this (T. at 688-89).
These excerpts are illustrative but are not a complete catalogue of similar statements by the defense during its own closing.
When the prosecutor followed with her own closing argument, she said:
You know, a street crime like this, it is about the worst kind of case for a jury to have to look at. For law enforcement to have to solve. Because the reality of the case involving a street crime, like this, is that the physical evidence, casings left behind, can't tell you who committed the crime. There aren't going to be fingerprints. There is not going to be DNA. The only way to solve a crime like this, is for witnesses to come forward and say what they saw. And anyone with one ounce of common sense, can figure out that when a person is capable of gunning down an unarmed man in front of a bunch of people, not just with a little handgun, mind you, but with an assault rifle, who the heck is going to get involved in that kind of *955 mess? That is exactly what happened in this case (T. at 691-92).
Defense counsel then objected and at sidebar moved for a mistrial because the prosecutor's statement suggested to the jury that "there were other witnesses who wouldn't come forward because they were scared" (T. at 692). Defense counsel also objected because "Other people . . . they took names . . . but didn't come forward, were scared." Id. The trial court denied the objections and motion for mistrial, and did not give any instruction or make any comment to the jury regarding the point.
We reject McKenney's argument that the State could not address defense counsel's rhetorical question and comments to the jury during the State's closing. We review the trial court's rulings for an abuse of discretion. Where there is an allegation of improper comments by a prosecutor, we do not consider the comments themselves in a vacuum; rather, we view the allegedly-wrongful comments in context. Under the principles known variously as "fair reply" or "invited response," defense counsel's comments are examined as well. United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); Vazquez v. State, 635 So.2d 1088 (Fla. 3d DCA 1994). The jury was instructed that argument by counsel is not evidence, and the comment by the State in this case is reasonably characterized as a fair reply to the defense arguments that elicited the comment.
The defense essentially asks that the State be prohibited from answering the question first posed by defense counsel why haven't other eyewitnesses come forward? The prosecutor did not elicit police testimony or argue that, "the witnesses in the Liberty City neighborhood do not come forward to the police or are scared to talk to the police," which would have violated the pretrial ruling in limine. Instead, the prosecutor responded fairly to the defense's question by discussing the inference, a matter of common sense, that the horrific crime scene and 30-plus rounds of assault rifle fire would not encourage a bystander to step forward. The prosecutor did not suggest that a different inference might apply in Aventura or any other neighborhood (as opposed to Liberty City). She did not suggest that any eyewitness was, or even might have been, intimidated by McKenney. Finally, the prosecutor did not suggest that other specific eyewitnesses had made reports to the police but were not at trial because of their fear.
The cases cited by the defense involve egregious comments that were not fairly responsive to statements in a defense closing. In Tran v. State, 655 So.2d 141 (Fla. 4th DCA 1995), the State started the commentary on "fear of reprisal" in opening statement. The prosecutor then elicited testimony from the only witness identifying the defendant at trial that another witness who could also do so was "scared to come to court." A police officer testified that witnesses at the scene of the shooting were being intentionally uncooperative, and another officer testified that he found it hard to believe that those witnesses had not seen anything. The State's closing included a statement that, "nobody wanted to get involved," and there is no suggestion in Tran that the defense invited any such statements or evidence. Tran simply followed an earlier case, Henry v. State, 651 So.2d 1267 (Fla. 4th DCA 1995), for the understandable (but different) rule that the State may not imply that the defense "got to" or tampered with a witness, or suborned perjury. No such implication was argued here.
Similarly, in Tindal v. State, 803 So.2d 806 (Fla. 4th DCA 2001), a prosecutor commented during closing on why a particular *956 non-testifying witness might not have come to court:
That person didn't testify, you don't know whether that person was intimidated or in fear when she said that, whether she had a gun pointed at her.
Id. at 808. Moreover, similar comments were made by the prosecutor during rebuttal in Tindal, that a specific witness's testimony might have been given, "because a gun was pointed at her and she was in fear." In that case, "the prosecutor's comments went beyond a fair reply." Id. at 810. In Johnson v. State, 747 So.2d 436, 439 (Fla. 4th DCA 1999), the prosecutor argued that the jurors could see how frightened a testifying witness had been at trial, and suggested that fright was possibly why another (non-testifying) witness, "wouldn't show up as well." On appeal, the denial of a motion for mistrial was affirmed, and the court noted that, "the prosecutor never directly suggested that the witnesses were in fear of the defendant." Id.
In Restrepo v. State, 552 So.2d 1126 (Fla. 3d DCA 1989), this court held that, "[i]t was improper closing argument for the prosecutor to state, without support in the record, that a witness was absent `maybe because he is afraid to testify against this man.'" Although that comment was clearly directed at fear of the defendant rather than a general fear that might relate to a bloody crime scene or to semiautomatic gunfire, this court concluded that the error was harmless beyond a reasonable doubt.
We conclude that McKenney invited comment on the fact that only one eyewitness testified, that the trial court did not abuse its discretion in overruling the defense objection and motion for mistrial, and that the claimed error was, in any event, harmless beyond a reasonable doubt.

III. Exhibition of the AK-47 to the Jury

McKenney's next issue asserts that it was harmful error to allow a demonstrator to exhibit to the jury an AK-47 semiautomatic assault weapon to the jury. In this case the actual crime weapon was not found. McKenney argues that the trial court erred in allowing a State witness to exhibit the firearm to the jury because the prejudicial effect on the jury substantially outweighed any probative value. § 90.403, Fla. Stat. (2004).
The trial court is afforded broad discretion in balancing possible prejudice against probative value, and we do not find an abuse of discretion in this case. The State's witness described how the weapon worked and correlated the location of spent shell casings with the likely location of the shooter and a sketch of the crime scene. The weapon was also identified by the eyewitness as the kind of weapon she saw in McKenney's hand. The AK-47 was not admitted into evidence and was not taken into the jury room. The State explained that the weapon used for the demonstration was not the one actually used in the shootings.
McKenney relies upon Taylor v. State, 640 So.2d 1127 (Fla. 1st DCA 1994), in support of his argument that the prejudicial effect of the demonstrative exhibit outweighed its probative value. In that case, the primary issue was whether the defendant was insane. The trial court allowed the medical examiner, "to use clay heads to describe the impact and nature of the wounds that caused death, and permitted the state to use a young woman of the same height, weight, and general features and coloring as [one of the murder victims] as a surrogate victim." The "surrogate victim" was clothed for the demonstration in a blue nightgown, though when her body was discovered, "she was clad in *957 shorts, T-shirt, and underwear." Id. at 1132.
In that case, the demonstrative "exhibit" was neither relevant to the issue in the case (the alleged insanity of the defendant) nor "an accurate and reasonable reproduction of the object involved." Id. at 1134 [citations omitted]. On those facts, the court understandably concluded that, "any possible relevancy between the victim's nightgown and the sanity issue is tenuous at best," and that the use of the surrogate victim had a prejudicial effect upon the emotions of the jurors.
In the instant case, however, the AK-47 was relevant to the issue of eyewitness identification and to an understanding of the crime scene. Chamberlain v. State, 881 So.2d 1087, 1102 (Fla.2004). There is no evidence or assertion that the AK-47 used for the demonstration was not similar (if not identical) to the murder weapon. "Surrogate victims," were not part of the State's demonstration of the weapon and the operation of the weapon.
Under those circumstances, the trial court did not abuse its discretion in allowing the use of the AK-47 for demonstrative purposes.

IV. Cumulative Effect

McKenney argues that the State's only eyewitness was so lacking in credibility that none of the three errors alleged by McKenney can be considered harmless beyond a reasonable doubt. While the jurors did send out questions during deliberations and did indicate that they might be deadlocked at one point, they ultimately rendered a verdict of guiltthus accepting eyewitness Gloria Tillman's testimony. The jurors knew nothing of the alleged speedy trial error, they had no reason to believe from the prosecutor's response in closing that McKenney had "gotten to" or intimidated any other eyewitness, and their questions during deliberations were not related in any way to the exhibition of the AK-47.
Finding no error in any of the three issues raised by McKenney, we decline to find that the jury's questions and the cumulative effect of the alleged errors require a new trial. We therefore affirm the convictions and each of the challenged rulings below.