# Third District Court of Appeal

## State of Florida

Opinion filed March 3, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2529
Lower Tribunal No. F05-12002B
_____

**Samuel Wright,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Marisa Tinkler Mendez, Judge.

Carlos J. Martinez, Public Defender, and Andrew Stanton, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Linda Katz, Assistant Attorney General, for appellee.

Before LINDSEY, MILLER, and BOKOR, JJ.

LINDSEY, J.

Samuel Wright appeals from his convictions and sentences entered after a jury found him guilty of armed robbery and burglary of a gas station, attempted felony murder of the store clerk, and shooting a deadly missile. Wright argues the trial court erred in allowing evidence of collateral crimes and in permitting improper hearsay. Wright also argues the State engaged in prosecutorial misconduct based on remarks made during the State's closing argument.[1] For the reasons set forth below, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In March 2005, a robbery occurred at a Marathon Gas Station and Market located on S.W. 216th Street. During the robbery, the clerk on duty at the time, Mohammed Rashid, was shot by an assailant wearing a ski

---

[1] Wright also challenged his arrest and subsequent confession. This Court considered these same issues in a separate appeal and affirmed Wright's convictions and sentences. See Wright v. State, 300 So. 3d 296 (Fla. 3d DCA 2020), review denied, SC20-386, 2020 WL 2316638 (Fla. May 11, 2020). Wright also argued the trial court failed to conduct a genuineness analysis of the State's peremptory challenge of a prospective juror. While this appeal was pending, the Florida Supreme Court decided State v. Johnson, 295 So. 3d 710, 712 (Fla. 2020), which held "that the party opposing a peremptory strike must make a specific objection to the proponent's proffered race-neutral reason for the strike, if contested, to preserve the claim that the trial court erred in concluding that the proffered reason was genuine." During oral argument in this case, counsel for Wright commendably conceded that the issues related to the arrest, confession, and jury selection have been resolved. We therefore affirm these issues without further discussion.

2

mask.  Rashid escaped by crawling into the walk-in refrigerator.  Despite being shot four times, he survived.

Wright was arrested the following month for possession of marijuana and driving with a suspended license after a traffic stop.  Upon searching the trunk, officers found a pistol and a ski mask matching the description of the mask used during the gas station robbery.  Wright was taken to the police station for further questioning.  After waiving his <u>Miranda</u> rights, Wright confessed to participating in several other robberies.  With respect to the robbery at issue in this case, Wright gave a detailed, recorded statement to Detective Marcy Myrtle, the lead detective on the case.  When asked if he remembered what happened, Wright described going to the gas station with co-defendant Alton Moses:

> A. When we got into the gas station um, we both exited, (yawns) excuse me, we both exited the vehicle, I went around the back and Alton around the front um, I stayed on the side of the building till Alton told me to come in around and I came around this way I shot the glass from his side.
>
> Q. Do, do you remember Altor, Alton going to service window and ordering something?
>
> A. Yes.
>
> Q. Okay, what did he order?
>
> A. I believe it was a quart of oil.

3

Q. Okay, was the clerk trying to get that?

A. Yeah.

Q. Okay, so after Alton orders the motor oil and the clerk went into the aisle is that when you shot out the glass?

A. Yes.

Q. Okay, did Alton go inside the business or did he stay outside?

A. Alton didn't come in.

. . . .

Q. Okay, and you went inside?

A. Uh-huh.

Q. Okay, how many shots do you think you fired?

A. I said, maybe five, five or six.

Q. Okay, um, what happened to the clerk, where did he go?

A. Clerk, he ran to the back.

Q. Okay.

A. I don't know if it was in the freezer or what, but he ran in the back.

Q. Okay, um, and you just kept firing and he ran?

A. Yes.

4

Q. Okay, did you go around the counter, the service counter?

A. Yes.

Q. And what did you do once you went behind the counter?

A. I um, grabbed the money out of the register, put it in my pocket, I was just looking around you know looking for other things, but there wasn't anything else in there.

B. Okay, so then you went outside to the parking lot.

A. Yeah, yes.

Q. All right, did something else happen in the parking lot?

A. Yes, when I came out the door, I seen uh, um, a van riding by and that's when I um, shot that one shot outside the, the van didn't go nowhere, but you know, then we went and got into the car and we left.

Q. Okay, um, how were you dressed that night do you remember?

A. I don't remember exactly what I had on, no.

Q. Did you have your face covered?

A. Yes.

Q. Okay, uh, what kind of mask did you have on your face?

A. A black mask.

5

Wright further told Detective Myrtle that the gun he used, a Tanfoglio pistol, was taken during the robbery of a flower shop.

An audio recording of Wright's confession was admitted into evidence at trial.[2]  The jury found Wright guilty on all counts.  This appeal followed.

## II.  ANALYSIS

Wright contends he is entitled to a new trial based on the following three errors: (1) the lower court committed reversible error in allowing the State to introduce collateral crimes evidence; (2) the lower court improperly admitted hearsay evidence; and (3) the State made improper arguments during closing arguments.  We address each issue in turn.

### A.  Collateral Crimes Evidence

Prior to trial, the State noticed its intent to present evidence of three collateral crimes: (1) A robbery at a flower shop on February 11, 2005; (2) a robbery-murder at a Marathon Food Center on February 21, 2005; and (3) an armed robbery at the Gould's Market on March 9, 2005.[3]  The State asserted that ballistic analysis in all cases matched.

---

[2] Wright's recorded statements were generally consistent with Rashid's testimony at trial.

[3] The State did not introduce evidence at trial with respect to the Gould's Market robbery.

Evidence relevant to a material fact at issue, except where the sole relevancy is character or propensity of the accused, is generally admissible unless precluded by some specific exception or rule of exclusion. <u>Williams v. State</u>, 110 So. 2d 654, 663 (Fla. 1959).[4] The Florida Legislature codified this Rule in section 90.404(2)(a), Florida Statutes:

> (2) OTHER CRIMES, WRONGS, OR ACTS.—
>
> (a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

"The admissibility of collateral crime evidence is within the discretion of the trial court, and the trial court's ruling shall not be disturbed upon review absent an abuse of that discretion." <u>Hodges v. State</u>, 885 So. 2d 338, 357 (Fla. 2003).

Wright argues the trial court abused its discretion when it permitted the State to introduce "<u>Williams</u> Rule" evidence of the flower shop robbery and the robbery-murder at the Marathon Food Center. The State contends the evidence was properly admitted, not to show bad character or propensity,

---

[4] This principle has come to be known as the <u>Williams</u> Rule, which governs the admission of collateral crimes evidence.

but to prove identity based on the distinctive firearm that was used in the commission of the collateral crimes and the robbery at issue here. The State further contends that in light of Wright's admissible confession to the subject offense, any potential error would be harmless as there is no reasonable possibility that the error affected the verdict.[5]

This Court has allowed collateral crimes evidence to prove identity when the same firearm is used. See Silver v. State, 278 So. 3d 337, 343 n.5 (Fla. 3d DCA 2019), review denied, SC19-1712, 2020 WL 1847636 (Fla. Apr. 13, 2020) ("We have held previously that when the same firearm is used in multiple robberies, 'the only inquiry for the trial court to make was whether such evidence of collateral crimes, which included both physical evidence and eyewitness testimony, was relevant to the issue of the perpetrator's identity–not whether the evidence revealed uniquely similar factual situations.'" (quoting State v. Williams, 992 So. 2d 330, 333 (Fla. 3d DCA 2008))); Fernandez v. State, 722 So. 2d 879, 880 (Fla. 3d DCA 1998) (holding that evidence of a collateral crime was admissible where "both crimes occurred in the same area, and involved the same gun and the same automobile"). Here, Wright confessed that the firearm from the flower shop

---

[5] Wright did not file a Reply Brief addressing the State's harmless error arguments.

was used in the subject offense and the robbery-murder at a Marathon Food Center. Moreover, a ballistics expert testified, based on projectiles and casings, that the firearm used during the robbery-murder at the Marathon Food Center matched the firearm used in the subject crime.

However, to the extent evidence of the collateral crimes was not admissible, we agree with the State that any error would be harmless in light of Wright's confession because, based on the record before us, there is no reasonable possibility that the error contributed to the conviction. See State v. Diguilio, 491 So. 2d 1129, 1139 (Fla. 1986).

**B. Detective Myrtle's Testimony Pertaining to Rashid's Statements**

Wright argues that the trial court improperly admitted Detective Myrtle's hearsay testimony of Rashid, the store clerk. Irrespective of the hearsay issues, which we need not address, the State argues that the error is harmless because Wright confessed that he shot Rashid and Rashid himself testified at trial. We agree. See id.

**C. The State's Closing Argument**

"In order for a prosecutor's comments to merit a new trial, the comments must be of such nature: (1) so as to deprive appellant of a fair and impartial trial; (2) materially contribute to his conviction; (3) be so harmful

9

or fundamentally tainted so as to require a new trial; or (4) be so inflammatory that they might have influenced the jury to reach a more severe verdict than that which they would have reached otherwise." Lopez v. State, 555 So. 2d 1298 (Fla. 3d DCA 1990). "The control of the prosecutor's comments is within a trial court's discretion, and that court's ruling will not be overturned unless an abuse of discretion is shown." Esty v. State, 642 So. 2d 1074, 1079 (Fla. 1994) (citing Durocher v. State, 596 So. 2d 997, 1000 (Fla. 1992)).

Wright argues the State engaged in prosecutorial misconduct based on remarks made during the State's closing argument. Where there is an allegation of improper comments by a prosecutor, we do not consider the comments themselves in a vacuum; rather, we view the allegedly wrongful comments in context. McKenney v. State, 967 So. 2d 951, 955 (Fla. 3d DCA 2007). Under the principles of "fair reply" or "invited response," defense counsel's comments are examined as well. Id.

The record before us is over 2100 pages of transcript. In addition to the testimony of detectives from the Miami-Dade Police Robbery Intervention Detail, the evidence consisted of Wright's confession, testimony of the victim, and a forensics expert, who concluded that the gun used in this case was the same gun used in other crimes tied to Wright. Any issues concerning the validity of the confession have been resolved by a prior panel

10

of this Court in <u>Wright v. State</u>, 300 So. 3d 296 (Fla. 3d DCA 2020). In short, we cannot find that any of the errors of which Wright complains warrant reversal under either the abuse of discretion or the harmless error analysis.

**III.    CONCLUSION**

The trial that occurred in this case may not have been a perfect trial. It need not be, however, to withstand appellate review. While a defendant in a criminal trial is entitled to a fair trial, he or she is not entitled to a perfect trial. <u>Michigan v. Tucker</u>, 417 U.S. 433, 446 (1974). As such, for the reasons detailed above, we affirm.

Affirmed.